### John H. Wallace v. James T. Finch.

*Who competent witness as to value of premises.* A farmer, who has resided for several years in the the vicinity of the premises in question and is well acquainted with them, who owns a piece of land near by, and knows of the sale and purchase of lands in the neighborhood, is a competent witness to testify respecting the value of such premises.

*Trespass on lands: Single damages: Treble damages: Statute construed.* In an action for trespass on lands, founded on *Revised Statutes of 1846, Chap. 111,* § *1 (Comp. L.,* § *4715),* it appeared in evidence that the defendant had by letter accepted an offer received by mail from plaintiff, to sell the lands; that the letter of acceptance, owing to an unavoidable delay of the mail, was not received by the plaintiff until after he had sold the lands to a third person, and that all the acts of trespass were committed after the mailing of such letter, and before defendant had notice of the sale to another:—

*Held,* That this was no defense to a recovery of single damages.

The right to recover treble damages under such circumstances, however, would depend upon the good faith of the defendant. If his negotiations tions were honestly and sincerely carried on with the real purpose of acting up to his acceptance of the plaintiff's offer, and to become the owner of the land pursuant thereto, and he committed the acts of trespass in the belief that such acceptance would secure to him the legal title, then he was not a trespasser within the punitory operation of the statute and was liable only for single damages.

When a law is susceptible of penal applications in special cases, such applications must be closely confined to cases within its principle. The penal

WALLACE *v.* FINCH.

application of this statute should be confined to cases marked by wantonness, willfulness, or evil design, such as to remove them somewhat nearer the domain of crime than common civil trespasses.

*Instruction to the jury.* An instruction to the jury in such case, which made the defendant's liability to the penal provisions of the statute depend upon his "expectation of *speedily* obtaining a deed and completing the purchase," exacted too much of the defendant. It was quite unimportant whether he expected to receive a deed or not, or at what time, if at all, he expected to receive one. He was at liberty to pay for the land without exacting a deed, and yet not subject himself to the rigor of this statute.

*Objection waived.* Where the bill of exceptions states that it was agreed upon by the attorneys of the respective parties, and it does not appear that any claim was made in the court below that the exceptions were too general to be incorporated in the record, an objection on the argument in this court, that the exceptions were taken in too general a manner to be brought upon the record, will not prevail.

*Heard January 4. Decided January 9.*

Error to Van Buren Circuit.

*Newton Foster* and *D. Darwin Hughes*, for plaintiff in error.

*Stephenson & Barnum*, and *H. F. Severens*, for defendant in error.

GRAVES, J.

Finch sued Wallace in the court below in an action of trespass, to recover damages for cutting on his land, and carrying away, a quantity of forest trees. The action was founded on § *1* of *Ch. 111*, of the *R. S., of 1846*, entitled "Of trespasses on lands;" and on the trial the jury found in favor of the plaintiff for four hundred and eighty-six dollars, and stated in the verdict that "the defendant did not have probable cause to believe that the land on which the trespasses were committed was his own."

The court, on motion of the plaintiff, awarded judgment for three times the amount found by the jury. The case comes up on exceptions, and the first is based on the judge's ruling, which allowed the witness Numaugh, against the objection that he was not competent, to state his judgment of the value of the land where the alleged trespass

was done. This ruling was clearly proper. The witness was a farmer who had then resided in the vicinity of the property for several years, and was well acquainted with it. He owned a piece of land near these premises, and had known of the sale and purchase of lands near by. Nothing more was needed to show that he was competent to testify respecting the value of the premises.

The important point in the case relates to the question of damages. The section on which the plaintiff counted, allows a recovery for treble damages when the mischief is done without leave of the owner of the land; but the next section, in express terms, limits the recovery to single damges, when it appears that the trespass was casual or involuntary; or when the wood, trees or timber were taken to make or repair a public road or bridge; or when the defendant had probable cause to believe that the land on which the trespass was done was his own.

The plaintiff in error concedes that the trespass in this case was not casual or involuntary, and that the timber was not taken for a road or bridge; and he does not dispute that he made himself liable in single damages recoverable in a common-law action. But he insists, that it appeared by the evidence that he had made a contract, by correspondence with Finch, to buy the land, and that he was therefore, not liable under the statute, and certainly not liable beyond single damages, and that the court, in giving the case to the jury, did not properly instruct them on this subject.

It appears by the bill of exceptions that evidence was given tending to show that Finch resided in Ohio, while Wallace lived in Van Buren county, where the land is, and that the latter wrote to the former in December, 1868, and made him an offer of three thousand dollars for the land; that Finch replied that he would not sell at that price,

but would for three thousand two hundred dollars, with one thousand six hundred dollars down, and the balance in two equal annual payments, secured by mortgage on the property; that Wallace then replied by letter prepaid, duly addressed and mailed, announcing his acceptance of Finch's offer; that this letter failed to reach Finch until the expiration of some three weeks, in consequence of the delay of the mail, caused by ice or high water in the river along which it was carried; that during this interval, and before the letter accepting the offer reached Finch, the latter sold the land to another party, and that all the acts of trespass were committed between the time when the letter accepting the offer was mailed to Finch, and the reception by Wallace of Finch's letter, explaining the delay and announcing the sale of the property to another.

It is not pretended that this correspondence, or any contract made by it, embraced any license to Wallace, or conferred any right upon him to enter upon the land or to take any thing from it, and certainly no view can be taken of it in which it could avail to save Wallace from the legal liability attached to a trespass having no element of willfulness, wantonness or evil design in it. And it is not perceived that it could avail him as any defense against a claim for single damages under the statute in question. The question of treble damages, however, stands on a different principle altogether. When this law gives single damages it has a single object, and that is to redress the injured party. But when the damages are to be trebled, the object is two-fold, namely: to redress the injury done, and also to punish the wrong-doer. No other explanation of these provisions is possible, and according to well settled rules, when a law is susceptible of penal applications in special cases, such applications of it ought to be closely confined to cases within its principle. Now, when we come

to interpret this statute, we must either hold that the legislature meant that any person, however blameless in a moral point of view, who should be within the inculpatory words of the first section and not within the exact words of the saving provisions of the second section, should be punished; or on the contrary, that the legislature meant that the penal application should be made only in cases marked by wantonness, willfulness or evil design. And it is hardly admissible to impute the former purpose to the legislature.

Indeed, the nature of the limitations contained in the second section indicates very clearly that no such purpose was contemplated. Those limitations all point to the exclusion of the penal application where the trespass is not aggravated by bad faith or other positive blame, and they amount to a legislative intimation that the penal provisions were not intended to apply where punishment beyond redress for injury would be inapt, impolitic and unjust.

The circuit judge appears to have been impressed with this view when he charged the jury upon that branch of the case relating to the negotiations for a trade, and if the instructions given on that subject were so framed as to lead the jury to a right understanding of the point, the judgment cannot be disturbed. As already intimated, the penal provisions were intended for cases falling within the general terms, and likewise marked by circumstances which remove them somewhat nearer to the domain of crime than common civil trespasses. Attending to the facts elicited in this case, and especially to the negotiations between the parties and the time in relation thereto when the trespass was committed, it was of vital importance to inquire into the good faith of Wallace. If his negotiations were honestly and sincerely carried on, with the real purpose of acting up to his acceptance of Finch's offer, and to become the owner of the land pursuant to the alleged arrangement, and he

believed that his last letter to Finch entitled him, and would secure to him, a conveyance of the legal title, then he was not a trespasser within the punitory operation of the statute, and was only liable for single damages.

But on the contrary, if he acted in bad faith and did not intend to carry out the supposed bargain,—if he resorted to the negotiation to cover, facilitate or qualify his trespass, then he was entitled to no immunity in consequence of the negotiations or alleged bargain.

Upon this part of the case, the court, in charging the jury, laid down two propositions. The first was as follows:

"If you find from the evidence, that prior to the cutting of any timber as alleged in the declaration, the plaintiff and defendant had been in correspondence with a view to a sale of the land in question, by the plaintiff to the defendant, and that the plaintiff had made a proposition or offer to sell the same to the defendant for a certain price or on certain terms which the defendant had in good faith accepted by letter duly mailed and directed to the plaintiff at his place of residence, and had requested a deed of the same to be delivered to him in accordance with said terms, and was ready and willing to perform on his part; and if you also find that under all the circumstances the defendant had good reason to believe that such deed would be made out to him by the plaintiff and forwarded within a reasonable time, in accordance with such terms and request, and that, anticipating its reception, he went on and cut or carried off, or caused to be cut or removed, the timber or any part of it on such land as charged in the declaration, then I charge you that, although this would not justify the defendant in so doing, yet it would bring him within the spirit if not the letter of the provisions of the second section, and would entitle him to the benefit of those provisions so as to subject him to single damages only."

.The second proposition was stated in these terms:

"If, however, and to this I would call your careful attention, you find from the evidence that the defendant took advantage of any negotiations pending between him and the plaintiff, to go on this land and cut or cause to be cut, or cause to be cut and carried off, the timber, or any part thereof, as alleged in the plaintiff's declaration, regardless of whether he got a deed or not, and without any *bona fide* expectation of speedily obtaining the deed and completing the purchase of the same, and without any probable cause to believe that he was soon to receive a deed of the same from the plaintiff in accordance with any negotiations that may have taken place or been pending between them, then I charge you that he is not within the provisions of said second section."

In view of the evidence, and of the aspect of the case to which they were addressed, we think these instructions exacted too much of the defendant. The inquiry to which they related was, whether the defendant was liable to the penal provisions of the statute, and the answer to be given depended, as already stated, upon the good faith of the defendant in respect to the purchase of the land. If he acted honestly and sincerely in negotiating the bargain, and committed the acts of trespass in the belief that the land was assured to him, and was then virtually his own, he was not amenable to these penal provisions. It was quite unimportant on this subject, whether he expected to receive a deed or not, or at what time, if at all, he expected to receive one. He had no deed at the time, and was at liberty to pay for the land without exacting one, and yet not subject himself to the rigor of this law.

I am of opinion, therefore, that the court fell into an

error in giving these instructions, and that the judgment should be reversed therefor.

If it were practicable, I should favor the reversal of the judgment as to all the damages added by the court, and its affirmance as to the damages found by the jury; but it is not. The defendant in error still claims the right to treble damages, and whether or not this claim is well founded, cannot be settled without another trial.

It was objected by defendant in error that the exceptions were taken in too general a manner to be brought upon the record. Without intimating here any opinion upon the proper practice, it will suffice to say in this case that the bill, by which these exceptions are brought before us, states that it was *agreed upon by the attorneys* of the respective parties, and it does not appear that any claim was made that they were too general to be incorporated in the record.

The judgment should be reversed with costs, and a new trial ordered.

The other Justices concurred.