Points Decided.

(June 24, 1911.)

# TWIN FALLS ORCHARD AND FRUIT COMPANY, Appellant, v. GEORGE W. SALSBURY and BELLE BROWN, Respondents.

[117 Pac. 118.]

Real Estate—Contract—Construction of—Tenants in Common—Sale of Interest of One—Technicalities.

(Syllabus by the Court.)

1.    Where Salsbury has title to sixty-eight acres of land and enters into a contract with Tyler and Schurger whereby Salsbury shall clear the land of sagebrush, plow and cultivate it, and Tyler and Schurger shall furnish the fruit trees and do certain other work in connection with planting said land to fruit, and Salsbury shall own one-half thereof and T. and S. the other half, and Salsbury thereafter sells his one-half interest in said land to Mrs. B. with the knowledge and consent of T. and S., and she takes possession of said land and proceeds to comply with S.'s part of said contract in regard to the cultivation of said land, and thereafter T. and S. and one H. enter into negotiations with Mrs. B. for the purchase of her one-half interest in said land, and finally purchase the same for the sum of $2,500, and T., S. and H. form the plaintiff corporation which takes over the title to said land, *held,* that Mrs. B. and her grantor are not liable to said corporation for one-half of said land at the rate of $250 per acre, or any other sum, under the terms of said contract.

2.    In the construction of a contract, the court should endeavor to arrive at the real intention of the parties, and if there is room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered and the contract construed in the light of such facts and circumstances, so that the intention of the parties to the contract may be ascertained, if possible, and given effect.

3.    Where tenants in common own certain real estate, the legal title to which is in one of them, and the others consent that the one so holding the title may transfer or sell his interest therein, they thereby accept the purchaser as a tenant in common with them, and would have no more right of action against such purchaser

under the contract between them than they would have had against their former cotenant had he held the title to the property himself.

4. Courts of justice will not so construe a contract as to give some of the parties thereto an unconscionable advantage, unless by the clear terms of the contract such advantage was intended.

APPEAL from the District Court of the Fourth Judicial District for Twin Falls County. Hon. Edward A. Walters, Judge.

Action to recover the purchase price for the alleged sale of real estate. Judgment for the defendants. *Affirmed.*

F. A. Hutto, for Appellant.

All prior or contemporaneous negotiations were merged into the written deed, executed and delivered on July 6, 1909, and as restricted by the contract. (*Jacobs v. Shenon*, 3 Ida. 274, 29 Pac. 44; *Morrow v. Matthews*, 10 Ida. 423, 79 Pac. 196; *Tyson v. Neill*, 8 Ida. 603, 70 Pac. 790.)

"Every grant or conveyance of an estate in real property is conclusive against the grantor, also against every one subsequently claiming under him." (Sec. 3114, Rev. Codes; 16 Cyc. 686, 700, and authorities cited; *Dennison v. Willcut*, 3 Ida. 793, 35 Pac. 698; *State v. McDonald*, 4 Ida. 468, 95 Am. St. 137, 40 Pac. 312; *Davis v. Nat. Sec. Co.*, 139 Cal. 223, 72 Pac. 1001; *Wells-Fargo & Co. v. Alturas Com. Co.*, 6 Ida. 506, 56 Pac. 165; *Dutton v. Ensley*, 21 Ind. App. 46, 69 Am. St. 340, 51 N. E. 380; *Deiderick v. Alexander*, 58 Kan. 56, 48 Pac. 594; *Hutchison v. Lord*, 1 Wis. 286, 60 Am. Dec. 381; *Daniels v. Tearney*, 102 U. S. 415, 26 L. ed. 187.)

Belle Brown and Salsbury are estopped from denying the terms of the deed and the contract. (13 Cyc. 604, 611, and cases cited.)

For the court to allow Tyler and Schurger to be divested of their interest, by proof of oral consent, is clearly contrary to the plain provisions of law, and should have been stricken. (Secs. 6007 and 6009, Rev. Codes; *McGinness v. Stanfield*, 6 Ida. 372, 55 Pac. 1020; 20 Cyc. 218; 12 Ency. of Ev. 23.)

Sweeley & Sweeley and P. W. Monahan, for Respondents.

The rights of tenants in common are distinct and separate, that is, one can sell and dispose of his interest without the consent of, and without affecting, the other or others. (17 Am. & Eng. Ency. of Law, 655; *Pearis v. Covillaud,* 6 Cal. 617, 65 Am. Dec. 543.)

A sale of the whole property by one tenant in common does not dispose of nor affect the interest or interests of the other or others, but passes only the title which he may have. (*Ames v. Howes,* 13 Ida. 766, 93 Pac. 35; *People v. Marshall,* 8 Cal. 51; *Emeric v. Alvarado,* 90 Cal. 444, 27 Pac. 356.)

SULLIVAN, J.—This action was brought to recover a money judgment of $8,500 on account of a real estate deal growing out of the following contract:

"This agreement made and entered into by and between G. W. Salsbury of Buhl, Twin Falls County and State of Idaho, party of the first part, and George C. Tyler of Kimberly, and Herman C. Schurger of Twin Falls, both of Twin Falls County and State of Idaho, parties of the second part, Witnesseth:

"It is hereby mutually understood that the said parties are desirous of entering into an understanding and agreement, whereby said parties will plant out about sixty-eight acres of fruit on the land hereinafter described, each contributing an amount to be named herein and to share the profits and losses as herein named. It is further understood and agreed that the first party is the owner, in fee simple, of the following described land, situated in the County of Twin Falls and State of Idaho, to wit: Lots two (2) and three (3) in section eighteen (18) township nine (9), south of range fifteen (15), E. B. M., and that said first part has a contract with the Twin Falls Land and Water Company for water for the same and has made one payment thereon and that there are no other liens thereon.

"It is hereby agreed on the part of the first party that he will prepare, by clearing the sage brush, plowing and leveling to admit watering the same, all of said ground and will

at all times hereinafter mentioned cultivate the same and water it under the direction of said George C. Tyler and both parties will gather and prepare for market any and all fruit that may be produced thereon; that he, first party, will furnish the land and make title thereto and convey by good and sufficient warranty deed any and all said land under the conditions hereinafter named. Said land is to be prepared so as to enable the second parties to plant out in the spring of 1909, twenty acres of peach trees, at least twenty acres of apple trees, 40 feet apart between the peach trees, additional of fruit trees to be designated by the said Tyler, in the spring of 1910, and the remainder the following spring of 1911, if so agreed by all parties.

"For and in consideration of the above and foregoing, second parties agree to furnish all fruit trees, plant and tend the same above the ground in a good and workmanlike manner, it being the meaning and intention of the parties hereto that first party shall furnish the land and all labor on and in the ground, during the time herein mentioned, except planting said fruit, marking out the ground therefor and digging the holes for planting, and that second parties shall furnish all fruit and care for the same above ground.

"The terms of this contract shall be for a period of three years, or until the said land is in bearing fruit and is either disposed of at the market value or divided between the parties in equal proportions.

"It is further mutually agreed that at any time during this contract that either or any of the parties, if so desired, may sell said land or any part thereof; that he may so sell the same, provided the same is not sold for a less amount than the sum of $250 per acre.

"It is further understood that all payments to become due for water, whether on the water contract or for maintenance, shall be borne one-half by each party, and in specifying the parties hereto and their shares therein, of either expense or profit, that first party shall represent one-half and second parties one-half unless otherwise specifically stated.

"It is further understood that during the term of this contract that the parties hereto are tenants in common of said premises above described, with all of the rights thereto belonging, and in the sale of any and all products of said land, second parties shall have control of the same and pay the expenses thereof.

"This contract dates from the 15th day of February, 1909.

"Witness our hands this 5th day of February, 1909.

> "GEO. W. SALSBURY.
> "MRS. LILY SALSBURY.
> "GEORGE C. TYLER.
> "HERMAN C. SCHURGER."

Said Salsbury was the owner in fee simple of the land described in the contract at the time of its execution, and said land was encumbered by the lien of a water contract with the Twin Falls Land & Water Company for water for said land, and the parties to said contract entered into the possession of said land under said contract. On the 6th day of July, 1909, Salsbury and his wife executed and delivered to the defendant, Belle Brown, a warranty deed for the consideration of $3,500 for the 68 acres of land described in the contract, which warranty deed conveyed all the estate, right, title and interest Salsbury had in said land. On the 1st day of October, 1909, Tyler and Schurger executed an assignment of their interests in said contract to the Twin Falls Orchard & Fruit Company, the appellant herein, which corporation was not organized until October 23, 1909. It appears from the evidence that said Tyler assisted in negotiating the sale of said land to the defendant Belle Brown; that the consideration actually paid for said land was 240 acres of land situated in the state of Tennessee, valued at $3,500. After the execution of said deed on July 6, 1909, Belle Brown took possession of said land through her husband as agent, and proceeded to carry out the terms of said contract in regard to the cultivation, etc., with the full knowledge and assent of Tyler and Schurger. John A. Brown, the husband of Belle Brown, testified as follows:

"George C. Tyler came to me before this deed was made and wanted me to take Salsbury's interest, and told me it was a good trade and that we could make some money. I told him of the Tennessee land—that we had some land in Tennessee, and he said if we could get Salsbury's interest for it, to trade and all times he helped in the deal. We went to the land and looked it over and he urged me to take over Salsbury's part and we could make some money. I talked it over with my wife and we concluded to trade the land in Tennessee. The land in Tennessee consists of about 240 acres and is worth $3,500. I then took up the matter with George W. Salsbury and he agreed to take the land. This is all we gave to Salsbury and all we agreed to give him, and we talked about how would be the best way to transact the business and concluded to do it as is shown in the deed. I thought and understood that we were getting an undivided one-half interest in the land and no more." He also testified as follows: "Tyler came to me later, some time before the 8th day of October, 1909, and asked me what I would take for my interest in that land; that he, Schurger and Hutto would buy our interest. I told him that we would take $2,500 and he said all right, and so I drew up the deed and I and my wife signed the same."

He also testified that after taking possession of the land he carefully cultivated, watered and tended it until he made the sale to Tyler, Schurger and Hutto on the 8th of October, 1909. Some fencing material was brought to the premises by Tyler and Schurger prior to the sale of October 8th, and used there.

Belle Brown testified as follows: "My husband and I talked over the trade with each other and concluded that it was all right. I owned a piece of land in Tennessee and my husband told me that Salsbury would give his interest in the fruit farm for it and we traded. I thought I was getting an undivided interest—one-half interest—in the land and believed nothing else. The land transferred to me is the same mentioned in the deeds on record in the case. We did not give Salsbury anything else besides the land in Tennessee and we did not

agree to give him anything else, and it was understood between us that all that was being conveyed to me was the undivided one-half interest and no more. My husband, John A. Brown, acted as my agent in the matter and what he did I told him to do and sanctioned what he did."

George W. Salsbury was also sworn as a witness and testified in regard to trading his interest in said land for said Tennessee land and that he talked the matter over with Tyler and he consented to it and said he thought it would be a good trade, and testified as follows: "I thought and believed at the time that I was only conveying to Belle Brown an undivided one-half interest in the land and agreed to take this Tennessee land for it. There was nothing else paid for the land and nothing else agreed to be paid. Up to the time I sold this land, the 6th day of July, 1909, the work on the land was all done according to contract and the same was in good shape and condition."

Another witness testified that he was the real estate agent who helped to make the deal and talked the matter over several times with Brown and Tyler and testified that the Tennessee land, as he understood it, was given to Salsbury for his interest in the land in question.

Some written documents were introduced in evidence, and among them the following signed by said Tyler:

"Kimberly, Idaho, 7, '09.

"This is to certify that I am perfectly willing for the contract between Geo. W. Salsbury and Geo. Tyler to be transferred to John A. Brown. I speak of the contract now on record concerning the 68 A of fruit land described in said contract.

"GEO. C. TYLER." (Seal)

The plaintiff introduced no oral testimony except sufficient to identify certain papers and nothing contradicting any of the testimony above quoted. On that state of facts the court rendered judgment in favor of the defendants, from which this appeal is taken.

It is contended by counsel for appellant that under the provisions of said contract, Salsbury sold and Belle Brown

purchased all .of said land, not only the interest of Salsbury but also the interest that Tyler and Schurger had.  The testimony clearly shows that it was the intention of Salsbury to sell only his interest in said land, and also the intention of Mrs. Brown to purchase only his interest, and the actual consideration paid was 240 acres of land in Tennessee valued at $3,500.  To hold under said evidence that Salsbury sold and Mrs. Brown purchased said entire tract of land would be to make another and different contract between the  parties, clearly contrary to the express provisions of the contract of sale and contrary to the intention of the parties.  This court will not go to that extent.

While it appears that the entire legal title to said land was in Salsbury and that he conveyed the same to Mrs. Brown, it was not the intention that she should become the owner of said entire premises as against Tyler and Schurger.  Tyler and Schurger knew all about the transaction; they knew that Brown took possession of said premises on the 6th day of July, and cultivated and looked after it just the same as Salsbury had done under said contract.  Thereafter said Tyler and Schurger and F. A. Hutto organized the plaintiff corporation, and said Tyler and Schurger assigned their interest in said contract to said corporation.  However, prior to the organization of said corporation and during its contemplated formation, Tyler, Schurger and Hutto made a proposition to Mrs. Brown to purchase her interest in said land, and she finally sold it to them for $2,500 and conveyed the same by warranty deed on the 8th day of October, 1909. At the very time that Tyler, Schurger and Hutto entered into negotiations with Mrs. Brown to purchase her interest in said tract of land, they knew all of the facts in regard to the matter.  They knew that Tyler and Schurger were the owners of a one-half interest in said land; they knew that it was not the intention of Mrs. Brown to purchase any interest in said land except the interest of Salsbury, and that it was her intention to sell to Tyler, Schurger and Hutto only the Salsbury interest; and it would appear from all the facts that they set a trap for Mrs. Brown with the clear intention

of getting her entire interest in the land for $2,500 and then compelling her by suit to pay them at the rate of $250 an acre for their half interest therein. No technicalities will impel a court to countenance in any manner such a transaction.

It was clearly the understanding of all the parties that the sale by Salsbury to Brown was only of Salsbury's interest, and it was sold with Tyler and Schurger's consent under the following provision of said contract: "It is further understood that during the term of this contract that the parties hereto are tenants in common of said premises above described, with all of the rights thereto belonging." Counsel for appellant contends that Mrs. Brown took all of the title to this land, and is liable for the consideration of $250 an acre under the following provision of said contract: "It is further mutually agreed that at any time during this contract that either or any of the parties, if so desired, may sell said land or any part thereof; that he may so sell the same, provided the same is not sold for a less amount than the sum of $250.00 per acre." Under the facts as they appear in the evidence, there is nothing in that contention, for the record shows that Tyler and Schurger knew of the sale or trade between Salsbury and Mrs. Brown, and Tyler assisted in making that trade. They knew that Mrs. Brown had no intention of buying any but Salsbury's interest, and consented to Mrs. Brown's taking the same possession thereof as Salsbury had, and consented to her carrying out his part of said contract in regard to clearing said land of sagebrush, plowing, leveling and watering the same and caring for it. The intention clearly was to place Mrs. Brown in the shoes of Salsbury so far as said contract was concerned. He held the entire legal title to said land. The object and purpose of the transaction between Salsbury and Brown was to place Mrs. Brown in the exact relation to said property and to Tyler and Schurger that Salsbury held before the sale and transfer. And now, upon a mere technicality, to permit the intention of all of the parties to be subverted and to compel Mrs. Brown to pay to the fruit company $250 an acre for said entire tract of land, would be to set aside the clear intention of the parties, and after

having sold and transferred to the stockholders of the fruit company, composed of Tyler, Schurger and Hutto, the entire title that she received from Salsbury for $2,500 and to pay to the fruit company $6,750, would be a traversty on justice and will not be permitted by any court. It would leave the matter in this position: Mrs. Brown bought Salsbury's interest for $3,500 and took legal title to said entire tract of land—just the title Salsbury had—no more, no less. Thereafter she sold all she procured from Salsbury to Tyler, Schurger and Hutto for $2,500 and conveyed to them the identical title she took from Salsbury. They now have the entire property and have brought this suit against Salsbury for $1,750 and against the two Browns for $6,750. They have the entire property, for which they paid $2,500—that is, conceding that Mrs. Brown owned it all at the time of the sale to them. On an investment, then, of $2,500 they get Salsbury's one-half and the legal title to Tyler and Schurger's one-half interest—the entire property, and now ask for judgment against Salsbury and the Browns for $8,500. Courts of justice will not construe a contract so technically as to authorize such an injustice. The construction of the contract contended for by counsel for appellant would violate the clear intention of the parties, and would violate one of the plainest rules for the construction of contracts.

This court just held in *Schurger v. Moorman, ante,* p. 97, 117 Pac. 122, that in the construction of a contract the court should endeavor to arrive at the real intention of the parties, and if there is room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered and the contract construed in the light of such facts and circumstances, so that the intention of the parties to the contract may be ascertained, if possible, and given effect. All of the facts show that it was not the intention of Salsbury to sell nor of Mrs. Brown to purchase any part of the land in question except the half interest owned by Salsbury, and it would be a grievous wrong now to compel Salsbury and Mrs. Brown to pay the plaintiff at the rate of

$250 an acre for the half interest of Tyler and Schurger in said land.

The trial court found that said George C. Tyler, Herman C. Schurger and F. A. Hutto knew that the defendant Salsbury and his wife understood that they were conveying to Belle Brown, and Belle Brown understood that she was taking by said deed of July 6, 1909, only the interest which said Salsbury and wife had in said premises at the date of said conveyance; and as a conclusion of law found that said deed passed only such interest in said land as the said defendant Salsbury had at the time of making said deed and did not convey an entire interest; and that such conveyance was subject to the interest which Tyler and Schurger had in said land under said written contract. The evidence fully supports that finding.

Upon the records in this case, the judgment of the trial court in favor of the defendants was correct and must be *affirmed,* and it is so ordered, with costs in favor of respondents.

Ailshie, Presiding J., concurs in the conclusion reached that the judgment should be affirmed.