(June 10, 1913.)

## EUGENE M. TILDEN, Respondent, v. DANIEL R. HUBBARD, Appellant.

### [138 Pac. 1133.]

CONTRACT — RULE OF CONSTRUCTION — EVIDENCE — SUFFICIENCY — CONFLICTING EVIDENCE—OPINION EVIDENCE—DAMAGES—RULE OF ASSESSMENT—WATER-LIFT—PROVISIONS OF CONTRACT—INSTRUCTION.

1. In the construction of a contract the court should endeavor to arrive at the intention of the parties, and if there is room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered and the contract construed in the light of such facts and circumstances, so that the

intention of the parties to the contract may be ascertained if possible and given effect.

2. Where a contract is entered into for planting an orchard and for the cultivation and irrigation of the same, which contains the following provision, "to clear land from sage brush, level, cultivate, construct laterals and water-lifts necessary for irrigating said land, irrigate and in all ways care for the same in a good and workmanlike manner, and to replace any trees that may be accidentally destroyed or that shall fail to grow from any reason or from any cause, for the period of four full growing seasons from date hereof," such contract is clear and explicit, and the language in no way obligates the promisor, the appellant in this case, to build a fence around the land sufficient to keep rabbits from trespassing upon said land, and shows no intention of the parties to include said obligation in the contract, and an instruction given by the trial court in accordance with the terms of the contract is not error.

3. *Held,* that the evidence is conflicting upon a number of issues of fact, but under the rule established in this state this court will not reverse a judgment in a case where there is substantial evidence to support the verdict.

4. *Held,* that there is substantial evidence to support the verdict.

5. The rule of law, as we understand it, is that the fact that one party has a greater number of expert witnesses than the other party is not the controlling test for determining the preponderance of the evidence.

6. Where an instruction under the issues and the evidence is as follows, "still the defendant was bound to use reasonable care to care for these trees, and this care would include the adoption of ordinary and reasonable methods for the protection of the trees against rabbits, short of building a fence or the erection of any other permanent improvement on the property," the instruction states the law governing the terms of the contract between the parties.

7. The following language used in the contract, "in all ways care for the same in a good and workmanlike manner," means, such means as is ordinarily and reasonably required to protect the trees against the injury from rabbits.

8. Where the evidence shows that tar paper wrapped upon the trees was applied to the trees as a protection against rabbits, and such method is the only method known for the protection of trees against rabbits other than fencing, which is not required under the contract, and the jury finds such protection was provided in a good and workmanlike manner, and was the only method other than fencing that was generally resorted to under the facts of the case, and

the verdict of the jury may include damages assessed resulting from injuries done by rabbits, this court will not reduce the amount of damages or reverse the case, because such verdict may include damages for injuries done by rabbits.

9. Where the complaint alleges damages on account of lack of cultivation, improper irrigation and destruction by rabbits, and evidence was offered for and against each of said allegations, and the jury finds a general verdict for the plaintiff assessing the aggregate damages in the sum of $4,000, and no instructions are given or questions submitted to the jury requiring the jury to find the damages specifically upon each of the alleged causes of injury, the verdict of the jury will not be set aside because the verdict is not sustained by sufficient evidence on each of the alleged injuries.

10. Where H. agrees to construct canals and a water-lift and the necessary machinery for the purpose of operating such water-lift to be used in carrying the water to the lands to be irrigated, the court did not commit an error by instructing the jury that the defendant was required by the contract to furnish a water-lift only if it was necessary for the irrigation of the land or some part thereof, and that it would have to be a water-lift that would work, and if power or an engine was necessary for the purpose of operating the water-lift, that it was the duty of the defendant to furnish such power and engine, and that the appellant had no right to remove the same, as it had become a part of the works of irrigation under the contract.

11. In a trial by jury, where the trial court instructs the jury that the instructions, taken as a whole, state the law of the case, and that all the instructions given should be considered by the jury, and it appears upon appeal that such instructions when taken as a whole state the law applicable to the facts and do not mislead the jury, the verdict of the jury will not be disturbed on appeal, upon the ground that a requested instruction was not given.

12. Where the complaint alleges damages for injury sustained by several causes in the sum of $15,200, and evidence is introduced for and against the total alleged damages, and the jury return a verdict for the sum of $4,000, and there is substantial evidence to sustain said amount, the verdict will not be set aside because it is excessive, or for the reason that it cannot be determined just what items of damage were included in the total amount found by the jury by their verdict.

APPEAL from the District Court of the Third Judicial District for Ada County.　Hon. Charles P. McCarthy, Judge.

An action to recover damages for default of written contract. *Affirmed.*

Cavanah, Blake & MacLane and Geo. H. Rust, for Appellant.

When, after an enumeration of particulars, there is a sweeping clause, comprising all other things under a general description, the scope of such clause is restricted in such things within the description of the same kind with the particulars enumerated. (*Rooke v. Lord Kensington,* 14 Eng. Rul. Cas. 717, 2 K. & J. 753, 25 L. J. Ch. 795, 2 Jur., N. S., 755, 69 Eng. Reprint, 986; *Grumley v. Webb,* 44 Mo. 444, 100 Am. Dec. 304; *St. Louis v. Laughlin,* 49 Mo. 559.)

General words may be limited by what precedes or follows, under the rule of *ejusdem generis.* (*Billings v. Morrow,* 7 Cal. 171, 68 Am. Dec. 235; *Dickson v. Cole,* 34 Wis. 621; *Kearney v. Clutton,* 101 Mich. 106, 45 Am. St. 394, 59 N. W. 419; *Bock v. Perkins,* 139 U. S. 628, 35 L. ed. 314, 11 Sup. Ct. 677; *Hawkins v. Great Western R. Co.,* 17 Mich. 57, 97 Am. Dec. 179; *Given v. Hilton,* 95 U. S. 591, 24 L. ed. 458; *Smyth v. Lynch,* 7 Colo. App. 383, 43 Pac. 670; *Quay v. Presidio & F. R. Co.,* 82 Cal. 1, 22 Pac. 925.)

The true construction of the contract is to be found, not alone in any particular provision it contains, disconnected from all others, but in the ruling intention of the parties, gathered from all the language they have used. It is the legal effect of the whole which is to be sought for. The form of the instrument is of little account. (*Herryford v. Davis,* 102 U. S. 235, 26 L. ed. 160; *Stockton Sav. etc. Soc. v. Purvis,* 112 Cal. 236, 53 Am. St. 210, 44 Pac. 561; *Rockefeller v. Merritt,* 76 Fed. 909, 22 C. C. A. 608, 35 L. R. A. 633; *Speed v. St. Louis M. B. T. R. Co.,* 86 Fed. 235, 30 C. C. A. 1; *Benton v. Benton,* 63 N. H. 289, 56 Am. Rep. 512.)

Wood & Driscoll, for Respondent.

In the construction of a contract the court should endeavor to arrive at the real intention of the parties, and if there is

room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered and the contract construed in the light of such facts and circumstances, so that the intention of the parties to the contract may be ascertained, if possible, and given effect. (*Schurger v. Moorman,* 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122; *Burke Land etc. Co. v. Wells-Fargo & Co.,* 7 Ida. 42, 60 Pac. 87; 9 Cyc. 578; 17 Am. & Eng. Ency. of Law, 17, 21; 2 Page on Contracts, sec. 1126.)

Questions of fact only are raised by appellant, and that in the face of the statutory rule stated by this court in the case of *Just v. Idaho Canal etc. Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381.

Instructions must be considered all together, to the end that they may be properly understood, and if when so construed, and as a whole, they fully and fairly state the law applicable to the evidence, there is no error in giving them, although detached sentences or separate charges considered alone might be erroneous or misleading. (Blashford, Instructions to Juries, 385; *Barrow v. Lewis Lumber Co.,* 14 Ida. 698, 95 Pac. 682; *Whitney v. Cleveland,* 13 Ida. 558, 91 Pac. 176; *Just v. Idaho Canal etc. Co., supra; Anderson v. Great Northern Co.,* 15 Ida. 513, 99 Pac. 91; Hayne on New Trial and Appeal, sec. 131.)

Cavanah, Blake & MacLane and Geo. H. Rust, for Appellant on Rehearing.

The rule that a judgment will not be reversed where there is a conflict in the evidence does not apply where the evidence is conflicting upon a question which does not govern the right of recovery. (*Breshears v. Callender,* 23 Ida. 348, 131 Pac. 15.)

Opinion evidence falls to the ground as utterly worthless when inconsistent with clearly proved facts, or with reason and common sense as applied to other credible evidence. Mere theoretical contentions are not to be accepted against positive testimony of eye-witnesses, unless circumstances are

shown to discredit the truth of such testimony. (Moore on Facts, secs. 1236–1238, and cases cited; *Baxter v. Chicago & N. W. Ry. Co.*, 104 Wis. 307, 80 N. W. 644; *Samulski v. Menasha Paper Co.*, 147 Wis. 285, 133 N. W. 142; 5 Ency. of Ev. 643, and cases cited.)

The record made shows no want of care to protect the trees from rabbits, and yet the lower court in effect told the jury that if there was such want of care the defendant would be liable. In other words, the instruction was without any evidence to support it, and by all the authorities is erroneous (*Jones v. Caldwell*, 20 Ida. 5, 116 Pac. 110; Blashfield, Instructions to Juries, sec. 86, and cases cited; Hayne on New Trial and Appeal, sec. 122, p. 643; *Johnson v. Fraser*, 2 Ida. 404, 18 Pac. 48; *Tarr v. Oregon Short Line R. R. Co.*, 14 Ida. 192, 125 Am. St. 151, 93 Pac. 957), and sufficient ground for reversal where it appears that such instruction misled, or might have misled, the jury, to the prejudice of the party complaining. (Blashfield, Instructions to Juries, sec. 91; *People v. Devine*, 95 Cal. 227, 30 Pac. 378; *People v. Roberts* 1 Cal. App. 447, 82 Pac. 624.)

The refusal to give defendant's requested categorical instruction was prejudicial error. (*Long-Bell Lumber Co. v. Stump*, 86 Fed. 574, 30 C. C. A. 260; *Last Chance Min. & Mill. Co. v. Ames*, 23 Colo. 167, 47 Pac. 382; Hayne on New Trial and Appeal, p. 599, note, p. 651.)

An instruction cannot be aided by assumptions not within its language. (Brickwood, Sackett on Instructions, 3d ed., secs. 163, 164.)

"Error will be presumed to be prejudicial unless the contrary affirmatively appears." (*Holt v. Spokane etc. Ry.*, 3 Ida. 703, 35 Pac. 39; *Taggart v. Bosch*, 5 Cal. Unrep. 690, 48 Pac. 1092; *Cleary v. City R. Co.*, 76 Cal. 240, 18 Pac. 269; *Rice v. Heath*, 39 Cal. 609.)

Where several issues are tried and a vital instruction is given in regard to a vital issue, it cannot be disregarded upon the ground that possibly the jury might have founded their verdict upon some other issue. (*Funk v. St. Paul City R.*

*Co.*, 61 Minn. 435, 52 Am. St. 608, 63 N. W. 1099, 29 L. R. A. 208.)

STEWART, J.—The respondent, Eugene M. Tilden, brought this action against the appellant, Daniel R. Hubbard, to recover damages in the sum of $15,200 for breach of contract entered into between the parties on December 16, 1909. The complaint alleges the making of the contract and sets forth such contract, and alleges that the defendant plowed and planted the land in the spring of 1910; that the trees then set out were not at the time of setting in a healthy, growing condition, but that they were greatly weakened in vitality; that said trees were not set in loose top soil, but that a large proportion were set too deep in clay soil, and that defendant did not irrigate said trees at all until said trees became further weakened in vitality, and did not afterward cultivate and irrigate said trees in a workmanlike manner so as to secure the growth thereof, and as a result of said failure of the defendant to set suitable trees, and on account of his failure to cultivate and irrigate and care for said trees in a workmanlike manner, practically all of said trees so set in the year 1910 failed to grow, and ultimately died or were left in such a weakened condition as to be worthless. The same allegations and defaults are also practically alleged in the complaint as to the year 1911, and in addition to such default is alleged failure to construct a water-lift to irrigate about ten acres of land, as required by the contract.

The answer admits the making of the contract and the payments alleged, and denies the allegations of default in performance of the contract during the years 1910 and 1911, and alleges that the high land for which a water-lift was necessary was properly irrigated with tank wagons in 1910, and that the water-lift was constructed in 1911; and alleges that any trees that were lost during the year 1910 were lost on account of the plaintiff's own negligence in failing to build a fence around said orchard, as a result whereof rabbits, without any fault on the part of the defendant, got into said orchard and ate, gnawed down and destroyed many of said

trees; and affirmatively alleges that the defendant fully complied with the contract in all respects.

The cause was tried to a jury and a verdict was rendered for the plaintiff for the sum of $4,000. A motion for a new trial was made and denied. This appeal is from the judgment and from the order denying a new trial.

The part of the contract involved in this suit is as follows:

"That the party of the first part, for and in consideration of the sum of $4,800, agrees to plant the whole of the West half of the North West quarter of Section 9, Township 2 North, Range 1 East of Boise Meridian, to fruit trees of the following kind and varieties, to-wit: ⅗ of said land to Jonathan apple trees, ⅕ to Rome Beauty apple trees and ⅕ to Winesap apple trees, within one year from the date hereof, and to clear said land of sage brush, level, cultivate, construct laterals and water lifts necessary for irrigating said land, irrigate and in all ways care for the same in a good and workmanlike manner and to replace any trees that may be accidentally destroyed or that shall fail to grow from any reason or from any cause, for the period of four full growing seasons from the date hereof and after said tract has been planted to fruit trees as above agreed."

The features in the contract involved are: (1) The appellant agrees to plant the whole of the 80 acres; (2) To clear said land of sage-brush, level, cultivate, construct laterals and *water-lifts necessary for irrigating said land,* irrigate and *in all ways care for the same in good and workmanlike manner,* and to replace any trees that may be accidentally destroyed or that shall fail to grow from any reason or from any cause, for the period of *four full growing seasons from date hereof,* and after said tract has been planted to trees as above agreed.

It will be observed from the language, the contract contains no obligations on the part of the appellant to build a fence around said land sufficient to keep rabbits from trespassing upon said lands, and this court cannot assume from any language used that the parties so intended. The trial court in an instruction given to the jury upon the law said:

"The defendant was not bound, under the terms of this contract, to build a rabbit-proof fence, or to erect any other permanent improvement on the property in order to protect the trees from rabbits."

In this part of the instruction we are satisfied that the court correctly interpreted the contract and correctly stated the law, and correctly instructed the jury that under the law the appellant was not bound to fence to protect the trees from rabbits, and could in no way be liable for damages because of failure to erect a proper rabbit-proof fence. In construing the contract, we find the language clear and plain as to the duty of the promisor; it is not ambiguous, and clearly expresses the intention of the parties. The general rule of law governing the construction of contracts which has been announced by this court, and the rule generally adhered to by courts of last resort is, that in the construction of contracts the court should endeavor to arrive at the real intention of the parties, and if there is room for doubt as to its true meaning, the facts and circumstances out of which such contract arose should be considered and the contract construed in the light of such facts and circumstances, so that the intention of the parties to the contract may be ascertained if possible and given effect. (*Twin Falls etc. Fruit Co. v. Salisbury,* 20 Ida. 110, 117 Pac. 118.) This same rule is followed in many authorities: *Rockefeller* v. *Merritt,* 76 Fed. 909, 22 C. C. A. 608, 35 L. R. A. 633; *Speed v. St. Louis M. B. T. R. Co.,* 86 Fed. 235, 30 C. C. A. 1; *Stockton Sav. etc. Soc. v. Purvis,* 112 Cal. 236, 53 Am. St. 210, 44 Pac. 561; 2 Page on Contracts, sec. 1104; *Burke Land etc. Co. v. Wells-Fargo & Co.,* 7 Ida. 42, 60 Pac. 87. So, in considering the sufficiency of the evidence and the instructions, the liability of the appellant in not constructing a fence will be dismissed from further consideration.

The first assignment of error is, insufficiency of the evidence to justify the verdict, and under this specification of error counsel for appellant contends: (1) That the evidence is insufficient to authorize recovery by plaintiff. This specification is general and includes every other specification and will

be considered generally. (2) That all the evidence in the case supports the facts that defendant cleared the ground of sage-brush and prepared the land for planting in accordance with the contract in the year 1910. This specification may or may not be true, and yet it would not alone be ground for reversal. We are unable to determine from the evidence whether the fact that the defendant did clear the land of sage-brush and prepare the land for planting in accordance with the contract was a matter that influenced the jury one way or the other in assessing the damages in the case. They may have based the damages upon other grounds alleged in the complaint, and other evidence offered. (3) That all the evidence in the case supports the fact that the defendant procured healthy trees for planting the land; that he planted them properly and irrigated and cultivated them at proper intervals and in a proper manner, and that he took reasonable and customary precautions and care to protect them against rabbits, all in a good and workmanlike manner and in accordance with the contract in that behalf, in the year 1910. This specification will be treated with No. 1 hereafter. (4) That all the evidence in the case supports the fact that the plaintiff visited the land during the fall of 1910, after the growing season was over, and that he saw and understood the condition of the trees and land at that time, and that he waived any claim for damages which he might have had because of the condition of the trees and land at that time. We will consider this specification with the others. Specifications 5, 6, 7 and 8 may all be treated together, and will now be considered.

The evidence consists of 330 pages of typewritten matter, and is contradictory upon most of the facts which relate specifically to the planting, cultivation, irrigation and care of the trees during the years 1910 and 1911. Witnesses, both for plaintiff and defendant, give substantial evidence which tends to support the contention of the respective parties upon the facts of the case. The issues upon which the evidence was presented were issues of fact, and the jury determined

the disputed questions, and we are satisfied that the jury made no mistake in finding upon the issues of fact.

Appellant, and likewise respondent, in the briefs, recite the evidence of the respective parties upon all the issues of fact, and we are satisfied from an examination of the evidence that there is substantial evidence upon all the issues upon which the jury passed, and it can serve no purpose, and would be a waste of time, for this court to cite the evidence which the jury had before it.

Complaint is made upon the part of counsel for appellant that the witnesses on the part of the respondent had no personal knowledge of the facts and gave testimony in the way of opinions upon the different facts, such as the preparation of the ground, the planting of the trees and the character of the same and their irrigation, cultivation and care, excepting the evidence of three witnesses, Hosler and the two Chapmans. The witnesses named were the parties who did the work in preparing the ground, planting the trees and tending to them. The evidence of these three witnesses is clear and positive, and they testify to the preparation of the ground, the health, appearance and character of the trees, the manner of planting, the irrigation of the trees and the care given them.

It would seem from the evidence that the Chapmans and Hosler, the parties who planted and cared for the trees during the year 1910, and Matthews, who reset and cared for the trees during the year 1911, were used as witnesses by both parties, and that experts were not called upon to testify as to whether the trees were properly set, except as to depth; while there is some evidence tending to show that the trees were not set at proper depth. But be that as it may, the evidence does not clearly show whether the jury based their verdict upon the question as to whether the trees were properly planted, or upon the lack of care after planting, or upon damages resulting from injury by rabbits, or upon which one of the three alleged causes of damages. It does appear, however, that the opinion evidence was addressed directly to the

question whether or not the trees died and became worthless as the result of want of cultivation or lack of proper care.

Many expert witnesses, after they had heard stated the care and attention given the trees at the time of planting and thereafter, testified that during the years 1910 and 1911 the cause of death of the trees and the failure of the trees to grow was the manner of planting and caring for them, independent of the damage done to the trees by rabbits; and other witnesses who had made a personal examination of the trees during the year 1911 testified that the manner of planting the trees and the care given them by those who planted and cared for them was such that the trees would not grow. Other witnesses testified that the trees were properly planted, cultivated and irrigated.

Hosler and Chapman also testified that so far as protecting the trees from rabbits, tar paper was rolled in cylindrical form and the cylinder set loosely over the trees from the top of the ground without any fastening whatever, and the wind promptly carried away a part of it and the rabbits found no difficulty in lifting the paper up and working under it, and the result was that damage was done by rabbits. The evidence, however, of these three witnesses as to the character of the trees and the cultivation and irrigation of the same shows that it is in favor of the plaintiff. There are a number of witnesses who testify that the trees died from lack of moisture. There is also evidence to the effect that the method of treating the trees with tar paper, for the protection of the same from injury by rabbits, would weaken the trees and was not beneficial to them.

From this testimony it is clear that there is a conflict in the evidence upon the issues as to whether the trees were properly planted and cared for.

The contention of counsel is perhaps correct as to the preponderance of the evidence under the conditions and facts in the contention made, but in our opinion the evidence does not come within the statement of counsel. While we find that there is a conflict in the opinion evidence, we do not find that there is positive evidence on the side of the appellant and

not upon the side of the respondent upon the issues of fact upon which the opinions were given. Positive evidence, in our judgment, may be found on the material facts upon both sides, in addition to the opinion evidence, and the jury has determined the weight of the evidence in favor of the respondent.

The evidence and opinion of many farmers who testified for plaintiff was certainly the very best evidence that could be secured upon such matters concerning the preparation of the land and the planting of trees, the cultivation and care of the orchard, as well as the damages done to such trees. This character of evidence is recognized by the authorities. Mr. Lawson in his work on Expert and Opinion Evidence, p. 19, says: "The opinions of farmers concerning the value of land, crops, stock or services, and the damages done thereto, are admissible."

To the same effect is *Townsend v. Brundage,* 4 Hun (N. Y.), 264; *Wallace v. Finch,* 24 Mich. 255; *Chicago etc. Ry. Co. v. Larsen,* 19 Colo. 71, 34 Pac. 477. We are inclined to think that counsel for appellant is in error in questioning the weight or value of the evidence on the part of respondent. There was some opinion evidence and expert evidence offered by both parties in the case, and the appellant presented several experts who were examined, and to whom hypothetical questions were directed, and such hypothetical questions were supposed to embrace the contentions involved in the case, and the expert witnesses testified that the trees were not properly planted or cared for, and for lack of proper care they became worthless. When the evidence is examined as a whole, the jury made no mistake in judging the weight of evidence and the preponderance of evidence on the various issues of fact. The fact that one party had a greater number of expert witnesses than the other is not the controlling test for determining the preponderance of the evidence.

Taking the evidence as a whole upon the different issues, there can be no question but that it is very conflicting, but the rule is established in this state that this court will not reverse a judgment in a case where there is substantial evi-

dence to support the verdict of the jury. (Sec. 4824, Rev. Codes; *Just v. Idaho Canal etc. Co.*, 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381.) Counsel for appellant, however, in their brief and oral argument, attempt to distinguish that rule from the facts of this case "whether or not a conflict in opinion evidence as to the effect of facts which are undisputed, in the face of direct evidence as to what the effect was in fact, presents a substantial conflict in the evidence." What was intended by this statement, apparently, is that where the opinion evidence is conflicting, and there is positive evidence on one side, that on appeal the case should be sent back for a new trial, under the rule that expert evidence or opinion evidence is entitled to no weight, where it is contradictory of direct evidence from personal knowledge.

It is next urged that the trial court erred in allowing an amendment to the complaint. This amendment is an allegation of failure on the part of the appellant to protect against rabbits. Error is also assigned in the giving of instruction 7, in which the court said, after instructing the jury that the defendant was not bound to build a fence or to erect any permanent improvement to protect the trees from rabbits: "Still the defendant was bound to use reasonable care to care for these trees, and this care would include the adoption of ordinary and reasonable methods for the protection of the trees against rabbits, short of building a fence or the erection of any other permanent improvement on the property." And also the refusal to give instruction No. 4, which stated in effect that the defendant was not bound to build a rabbit-proof fence: "And if you find that the trees were destroyed by rabbits without any fault on the part of the defendant, the plaintiff cannot recover on account of trees so destroyed." And also the refusal to give defendant's requested instruction No. 7, to the effect that if plaintiff knew that the land was unfenced and acquiesced in some other method of protection against rabbits, he could not recover damages for rabbit injuries during the time the fence remained unconstructed.

This contention is based upon the construction of the contract between the parties, and the particular language upon which appellant bases his argument is the following: ''And to clear said land of sage-brush, level, cultivate, construct laterals and water-lifts necessary for irrigating said land, irrigate *and in all ways care for the same in a good and workmanlike manner.''* The respondent in answer to this contention relies upon the same language above quoted, and argues that such language requires the appellant to in all ways care for the same in a good and workmanlike manner, and that this means to do all those things required in order to protect in a good and workmanlike manner the trees, and this meant to do what is ordinarily and reasonably required to protect the trees against the injury from rabbits. An examination of the evidence shows that the only method ordinarily resorted to by farmers and orchard growers other than fencing against rabbits was to put around the trees tar paper. Some witnesses condemn such method, but there is no evidence showing any other method except fencing. The evidence as to whether tar paper is of value is very doubtful and unreliable, but the jury under the evidence would perhaps be justified in finding such protection was provided in a good and workmanlike manner, and was the only method other than fencing. To our minds the appellant applied this method as it was generally applied by farmers and orchardists in caring for and protecting apple trees. We are satisfied that there is no evidence upon which the jury were justified in finding that the appellant was negligent or was liable for the injury done by rabbits for the year 1910.

Under the evidence it is clear that the plaintiff cannot recover for injury done by rabbits for the year 1910, and that the defendant used the method generally approved by orchardists for the protection of the trees from injury by rabbits, and that the plaintiff approved the method adopted by the defendant, and that the only method that would have been effective would have been the construction of a rabbit-proof fence surrounding the eighty acres where the orchard was planted.

There can be no question but that the orchard planted under the contract during the year 1910 and also during the year 1911 suffered, and that a great number of trees died and became worthless, and the extent of this condition was such as to justify the plaintiff in refusing to make the payment due in 1911, and that the plaintiff was justified in refusing to proceed under the contract, and had the right to declare the contract forfeited. It is conceded that evidence was introduced showing injury and loss of trees, and damage was sustained by plaintiff by reason of defendant's failure to properly cultivate and irrigate, and also damages and injury were sustained by the plaintiff by reason of destruction by rabbits. This court is unable to determine what per cent or part of the verdict was allowed on account of lack of cultivation, improper irrigation or destruction by rabbits. The jury evidently arrived at and fixed the total damages without determining the amount of the damages resulting from any one of the several causes. This was permissible under the allegations of the complaint, which alleged that the plaintiff had sustained damages by reason of several causes in the total sum of $15,200. The instructions of the trial court did not require the jury to find separately the damage sustained by lack of cultivation, irrigation or destruction by rabbits, and the defendant made no request for such instructions.

The next error assigned is the giving of instruction 8 and the refusal to give defendant's requested instruction No. 6. The contract provides that the defendant agreed to construct all necessary water-lifts, and that the entire eighty acres covered by the contract should be planted, cultivated and irrigated. The court gave instruction 8, which is admitted to be correct, and added thereto the following: "It would have to be a water-lift which would work . . . . and if power or an engine were necessary for the purpose of operating such water-lift, then it would be the defendant's duty to furnish such power and engine. . . . . If you find from the evidence that the defendant did construct such a water-lift, that the same was necessary, and subsequently removed the same without providing a substitute for it, then the plaintiff is entitled

to the reasonable value of such water-lift at the time of its removal, including any engine which may have been necessary for use in connection with the same and may have been provided by the defendant.''

Instruction No. 6, which was requested by the defendant and which was refused, is as follows: ''If such lift has been constructed with a suitable engine for its operation, the mere fact that the defendant has temporarily during a time when the engine was not required to operate said lift, disconnected it therefrom, does not afford the plaintiff any right of action for damages on account of failure to construct such lift.'' It would seem from the instruction given, the court based the instruction upon the terms of the contract which provided: ''Construct laterals and water-lifts necessary for irrigating said lands, irrigate and in all ways care for the same in a good and workmanlike manner.'' It appears that the trial court instructed the jury that the defendant was required by the contract to furnish a water-lift only if it was necessary for the irrigation of the land or some part thereof, and that it would have to be a water-lift which would work, and if an engine was necessary for the purpose of operating the lift, that it was defendant's duty to furnish such engine, and if a water-lift was necessary and was constructed, and was removed without providing a substitute, the plaintiff was entitled to damages for the removal, including an engine which may have been necessary and was provided by the defendant. This instruction clearly stated the liability of the defendant under the contract, and the defendant himself elected and determined that an engine was necessary to furnish power for operating the lift and recognized the obligation placed in the contract, and such engine became a permanent part of the system of construction found necessary by the defendant for irrigating said land. The evidence also shows that the engine was purchased especially to irrigate a small tract included in the contract involved in the case, and there was no error in the court's instruction.

Appellant also assigns as error the giving of instruction No. 5, and the objection is made to the following part of the

instruction: "If the trees planted in 1911 were not suitable and proper trees and were not properly planted, and thereafter were not properly cultivated and cared for, and on account of such failure, or any of such failures, said trees failed to grow, then and in that event plaintiff would be entitled to damages for such failure."

The claim of appellant is that the language above quoted provides for the jury's finding double damages, as the appellant replanted the trees in 1911. This instruction, taken in connection with other instructions in the case, does not direct the jury to find double damages, and is based upon the assumption that the 1911 trees had also failed to grow by fault of appellant, and this particular part of the instruction should be considered with the other instructions given, and when so considered the court told the jury that they should not take any one instruction as declaring the whole law of the case, but consider all of the instructions given to the jury. This rule has been approved in a number of cases by this court. (*State v. Bond,* 12 Ida. 424, 86 Pac. 43; *Whitney v. Cleveland,* 13 Ida. 558, 91 Pac. 176; *Barrow v. Lewis Lmbr. Co.,* 14 Ida. 698, 95 Pac. 682; *Anderson v. Great Northern R. Co.,* 15 Ida. 513, 99 Pac. 91; *Just v. Idaho Canal etc. Co.,* 16 Ida. 639, 133 Am. St. 140, 102 Pac. 381.) In this connection we refer to instruction No. 3, in which in effect the court instructed the jury that the defendant is not liable for trees which were destroyed or failed to grow without fault on his part, provided he replaced said trees as provided in the contract, and in instruction No. 11 the court advised the jury that the measure of damages is the difference between the value of the tract of land involved at the time the suit was commenced and what its value would have been if the defendant had performed his part of the contract. It will be seen that the jury was not in any way misdirected by instruction 8, when taken into consideration with the other instructions. The evidence shows that the estimated damages testified to by the witnesses was $150 per acre for the first year's growth, and $50 per acre for the second year's growth, while a large number of witnesses placed the damages at

$100 per acre for each year's growth, and the evidence clearly shows that at the end of the year 1911 the trees planted had no value as an apple orchard. The amount of damages demanded by the complaint was $15,200. The verdict of the jury was that the damage sustained was $4,000, and certainly the jury did not allow double damages for the year 1911.

Objections are urged to other instructions, that they were contradictory, and that the court erred in not giving certain instructions asked by the defendant. We have examined all the instructions given and the instructions refused, and from such examination there can be no question but that the trial court clearly advised the jury upon the law of the case, and that the instructions are applicable to the facts as shown by the evidence.

We find no error in the record which is a reversible error. The judgment is *affirmed.* Costs awarded to respondent.

Ailshie, C. J., and Sullivan, J., concur.

ON REHEARING.

(March 4, 1914.)

SULLIVAN, J.—A rehearing was granted in this case, additional briefs were filed and oral argument made, and the court has carefully considered the case and concluded that there is substantial evidence to sustain the verdict and judgment, and that the instructions fairly cover the law of the case. We do not find sufficient error in the record to justify a reversal of the judgment, and we hereby affirm and confirm the original decision of this court in this case.

Ailshie, C. J., and Stewart, J., concur.