(June 13, 1902.)

## WALKER v. McGINNESS.
[69 Pac. 1003.]

WATER RIGHTS—CHANGE OF POINT OF DIVERSION.—Where the point of diversion of water is fixed by decree, and thereafter in another suit wherein the parties to the first decree are parties, with many others, and in the latter suit the water awarded to the parties to the first decree is scaled down, and the point of diversion thereof is not changed, such point cannot be changed if others are injured thereby.

(Syllabus by the court.)

APPEAL from District Court, Elmore County.

W. C. Howie, for Appellant.

The facts are fully stated in the opinion. One, after he has diverted water, may use a part of a channel of a stream to convey his water to his land, and in doing so may mingle it with other water and take his water out again, but it is his water from the time he first diverts it and brings it under his control, and in taking it out the second time he is only recovering, as it were, his water, and in doing so he must not in any way interfere with other rights. (Kinney on Irrigation, secs. 246, 247.)

N. M. Ruick, for Respondent.

Cites no authorities on the point decided by the court.

SULLIVAN, J.—This action was brought to enjoin the defendant from changing his point of diversion of certain water decreed to him by the district court from Cold Springs creek, Elmore county.

The complaint alleges that plaintiffs are the owners of six hundred acres of land lying along and upon said creek: One tract of one hundred and sixty acres, known as the "McAnulty" or "Stanfield-McAnulty" tract; one of three hundred and twenty acres, known as the "Cold Springs Ranch"; and one of one hundred and twenty acres, known as the "Stanfield Desert." That defendant owns eight hundred acres of land lying along and upon said creek below plaintiffs' said land; one tract of one hundred and sixty acres, known as the "McGinness Homestead"; one of two hundred acres, known as the "McGinness Desert"; one of one hundred and sixty acres, known as the "Delano" tract; one of one hundred and sixty acres, known as the "McGinniss-McAnulty" tract; and one of the one hundred and twenty acres, known as the "William McGinness Horsehead Ranch." The latter tract, however, is not involved in this controversy, as it is not claimed that defendant has changed his point of diversion as to that tract. Other people own ranches lying along and upon said creek, and irrigate the same therefrom—some between the lands of plaintiffs and defendant, and others below the land of defendant. ·

In 1889, the defendant, and others using water from said creek, brought suit, in the district court of said county, to enjoin one S. A. McAnulty (who was then the owner of these appellants' "McAnulty" tract of one hundred and sixty acres above referred to) and some other users of water from said creek, from diverting the same therefrom. Afterward, in 1890, an amended complaint was filed in said action, in which all of the plaintiffs mentioned in the original complaint were dropped but said Daniel McGinness.

Said S. A. McAnulty answered, setting up ownership to the said McAnulty one hundred and sixty acre tract of land, and the right to the use of water therefor from said creek. In that suit McGinness alleged ownership of but the first four of his tracts above described. In the month of August, 1891, judgment was entered in said cause, awarding to McGinness nine hundred inches of the waters of said creek; said decree designating the point of diversion for said nine hundred inches of water as "the head of plaintiff's big or main ditch,

which commences near the mouth of the canyon on said creek, above the said lands of plaintiff, and about three hundred yards below his original water location made in 1873 or 1874." It is from this point that plaintiffs herein contend that defendant, McGinness, has changed his point of diversion, to a point about two miles below on said stream, to their injury. Only the three hundred and twenty acres of land owned by plaintiffs, and known as the "Stanfield-McAnulty" tract, is affected by said decree. In November, 1894, said McAnulty sold said three hundred and twenty acre tract, with his water right, to J. B. Stanfield, and thereafter an action was begun by the said Daniel McGinness and others against J. B. Stanfield and many others, to determine the priorities of rights to the use of the waters of said creek. Said McGinness then owned said four first tracts of land above referred to as belonging to him, and said Stanfield then owned all of the lands now owned by plaintiffs except a right, as heirs, in the land described above, as the "Elizabeth Walker" or "Walker Estate" land, which land is not involved in this action. A judgment was entered in the last-mentioned case in 1898, and a modified judgment was entered therein in May, 1899. By the final decree, the defendant in the action at bar (Daniel McGinness) was awarded four hundred and thirty-six inches of water from said creek, and J. B. Stanfield three hundred and sixty-eight inches of water. The said Walker estate lands were awarded the first right on said creek. The order of priorities, as stated in said decree, between defendant, Daniel McGinness and said J. B. Stanfield, was as follows, to wit: First, McGinness, fifty-eight inches; second, Stanfield, one hundred and thirty-six inches; third, McGinness, three hundred and twenty-eight inches; fourth, Stanfield, twenty-seven inches; fifth, McGinness, fifty inches; sixth, Stanfield, two hundred and five inches. Other parties to said suit were awarded water in different amounts, and from different dates. Said decree also provided that said awards of water should be subject to the decree in the McGinness-McAnulty suit, which is referred to above as being entered on the tenth day of August, 1891; and that proviso or clause threw the awards of water to Stanfield behind or

later than the awards to McGinness, except the one hundred and thirty-six inches first awarded to Stanfield. The last decree did not specify where the water awarded was to be diverted from said stream, nor where measured, further than to declare that it must be measured at the point where diverted from the creek; and it also continued the orders of injunction. The McGinness big or main ditch mentioned in the decree of August 10, 1891, and as being the point of diversion of the nine hundred inches of water awarded to McGinness, is a large ditch taken out of said creek about two miles above respondent's land, at or near the mouth of a canyon. Said ditch extends from near the mouth of said canyon down nearly to respondent's land, and there empties the water back into the channel of the creek, and the water so turned in runs a short distance in said channel, and is then taken out in a short ditch, and then turned back into said channel again, and then taken out of the channel a third time, a short distance above defendant's land. It appears that the first water master was appointed, for the distribution of the waters of said creek, in 1898, and that a water master has been appointed each year since. In 1898, a weir for measuring the nine hundred inches of water awarded to McGinness was placed at the head of said big ditch, at the mouth of said canyon, and remained there until the spring of 1900, when McGinness put in a new weir where the ditch enters his land, and measured the water decreed to him at that point, instead of two miles above at the head of said big ditch. Appellants claimed that they were injured by said change of the point of diversion, and demanded of McGinness that he put said new weir up at the mouth of said canyon, and measure his water there. This he refused to do, and claimed that his point of diversion was where said new weir was placed near his land, and not at the mouth of said canyon. Plaintiff demanded that he divert and measure his water at the mouth of the canyon, which he refused to do. Thereupon this action was brought to restrain him from changing his point of diversion from the head of said big ditch, at the mouth of said canyon, to said point just above his said land. It is alleged in the complaint in the action at bar that the bed of the creek between

said two points is of a gravelly nature, and that about one-half of the water is wasted between said two points; that, plaintiffs' right being subsequent to those of McGinness, the water master was compelled to turn away from them water awarded to their lands by said decrees, in order to make up the loss of water between said two points, and that they were injured thereby. In his answer, McGinness admitted a loss of water between said points, but denied that he had changed or was about to change his point of diversion, alleging that said lower point of diversion was, and always had been, his point of diversion. The cause was tried by the court without a jury, and all of the allegations of the complaint were proven, and none of them controverted by defendant except the one issue, to wit, the change of the point of diversion of defendant's water.

The whole controversy is on the one issue as to whether defendant had changed his point of diversion of the water awarded to him under said decrees of August 10, 1891, and May 10, 1899.

In the suit at bar, the trial court's third finding of fact is as follows: "That the point and place of measurement of said nine hundred [900] inches of water, to the use of which said Daniel McGinness, the plaintiff therein, was awarded a prior right over the said defendants Samuel A. McAnulty and others, was and is at the head of the big or main ditch belonging to said Daniel McGinness, which ditch commences near the mouth of the canyon on said Cold Springs creek, above the lands of said plaintiff, Daniel McGinness." This finding of fact is based on the decree of August 10, 1891, in the suit between Daniel McGinness and S. A. McAnulty, and affects the one hundred and sixty acre McAnulty tract, owned by the appellants in the case at bar. The ninth finding of fact in the case at bar is as follows: "That the point of diversion of the waters so awarded to said Daniel McGinness, by the decree in the last above-mentioned case, was at the time the decree was rendered and entered, and still is, at a point in the channel of said Cold Springs creek at or near the north line of the southwest quarter of the southwest quarter of sec-

tion 28, township 4 south, of range 9 east, and at the point where defendant's ditch now at this date takes out of said creek, in said Elmore county, state of Idaho; and that the point or points of diversion for the other lands of said Daniel McGinness for which water was awarded by said last aforementioned decree was at the place last hereinbefore mentioned, or at points or places further down said Cold Springs creek." This finding of fact refers to the decree in the suit of Daniel McGinness and others against J. B. Stanfield and others. The tenth finding of fact in the case at bar is as follows: "That the point of diversion as provided for in the decrees hereinbefore mentioned, and found in this action, has not been altered or changed by the defendant, and that the water taken by him out of said Cold Springs creek for the irrigation of his lands mentioned in said decrees has been taken by him at the several points designated in said decrees, and herein found to be the true points of diversion."

From all of the findings of fact, the court found, as conclusions of law, that the water awarded under the decree in the case of *McGinness. v. McAnulty* must be measured at the mouth of said canyon, and the water awarded to him under the McGinness-Stanfield decree must be measured to him at the point about two miles below the mouth of said canyon, and just above the land of McGinness. A decree was entered, in pursuance of said findings of fact and conclusions of law, directing that the nine hundred inches of water awarded to McGinness in the suit of *McGinness v. McAnulty* (decree entered August 10, 1891), be measured, under a four-inch pressure, at a point on said Cold Springs creek at the head of the big main ditch of said McGinness, near the mouth of the canyon, on said creek, and that the waters awarded to McGinness under the decree of May 10, 1899, in the suit of *McGinness et al. v. Stanfield et al.,* shall be measured for use on the Daniel McGinness homestead at a point in the channel of said creek at or near the north line of the southwest quarter of section 28, township 4 south, range 9 east, and at the point where defendant's ditch takes out of said creek, and that the remaining waters awarded to said McGinness from said creek by said decree of May 10,

1899, shall be measured at the several points of diversion thereof at or below the point of diversion of the water for the said McGinness homestead. The court failed to find as to whether there was any loss of water between said points of diversion, or as to whether plaintiffs were damaged by McGinness changing the point of diversion, except inferentially, on the latter point, that there had been no change of point of diversion.

Several errors are assigned: 1. That the court erred, in its ninth finding of fact, as to the proper point of diversion and measurement in the case of *McGinness v. Stanfield;* 2. That the court erred in its tenth finding of . fact, that there was no change of the point of diversion by defendant; 3. That the court erred in not finding that the plaintiffs were compelled to turn more water down the creek owing to defendant's change of his point of diversion, and plaintiffs were thereby deprived of their water, and injured thereby; 4. That the court failed to find as to the loss of water between said two points of diversion; 5. That the court erred in its conclusions of law. In our view of this case, we need not take up said assignments and dispose of them seriatim. For if the evidence discloses the fact that the respondent, McGinness, has changed his point of diversion to the injury of the plaintiff, the judgment must be reversed.

It must be remembered that Stanfield was the successor to the land and water right of McAnulty, and appellants the successor of Stanfield thereto, and as between Stanfield and McGinness, and appellants and McGinness, the decree in the McGinness-McAnulty case is binding. So far as the suit at bar is concerned, the trial court could not change or annul that decree. The water rights litigated in the McGinness-McAnulty suit are the identical water rights litigated between McGinness and Stanfield in the McGinness-Stanfield suit, and the decree of August 10, 1891, has not been set aside, and is binding on McGinness as to his point of diversion.

In the first suit there were only two parties, McGinness and McAnulty; in the second, tried about eight years later, there were a number of parties plaintiffs and defendants, and in the latter decree the quantity of water awarded to each (McGinness and McAnulty) was scaled down, but the point of diversion

of the water awarded to McGinness was not changed; so a peculiar and impossible condition exists in the judgment of the case at bar. The judgment adjudges that the point of diversion of the water awarded to McGinness in the McGinness-McAnulty suit is at the mouth of said canyon, and that there has been no change in the point of diversion thereof, and that the water has at all times been diverted at said point; yet in that judgment, and for the same water above referred to, it is adjudged that the point of diversion is about two miles below the mouth of said canyon. This presents the impossibility of diverting the identical water, for the same land, at two different points of diversion, at the same time, two miles apart. Under the McGinness-McAnulty decree, the said water must be diverted at the mouth of the canyon. Stanfield was the successor of McAnulty, and stood in his shoes, so far as that decree is concerned as to the McAnulty land and water right. In the case of McGinness and others against Stanfield and others, the relation of McGinness and Stanfield had not changed so far as the land and water rights were involved in the former case. That case fixed the point of diversion for the nine hundred inches of water awarded to McGinness, and he cannot change it, to the injury of the assigns and successors of McAnulty, as to the lands and water rights involved in that case.

While the judgment of May 10, 1899, scaled down the amount of water awarded to McGinness and McAnulty by the decree of August 10, 1891, it did not change the point of diversion of the water awarded to McGinness.

The decree in the case at bar also provides that the water master must measure the water awarded to McGinness under the decree of August 10, 1891, at the mouth of said canyon, and provides that the water awarded to him under a decree of May 10, 1899, shall be measured at a point two miles below the mouth of said canyon. When it is remembered that the water under the decree of 1899 to McGinness is the same water, scaled down, as that mentioned in the first decree, it will be perceived that it would be a difficult feat for the most expert water master to measure the same water, at the same time, from the same creek, at points two miles distant from each other.

The above-mentioned different parts of said judgment are irreconcilable, and cannot stand together. And upon an examination of the judgment and decree of May 10, 1899, we find that, while it scaled down the amount of water awarded to McGinness, it does not change his point for the diversion of said water.

The evidence clearly shows that respondent claimed his point of diversion to be at the head of said canyon, at the head of his big ditch, for the purpose of keeping others from taking water therefrom, and at the same time demanded that the water awarded to him be measured two miles below the mouth of said canyon, so as to avoid losing the seepage and loss occasioned by the water flowing in his said ditch and channel of the creek for that distance. That, he will not be permitted to do. Under the decree of August 10, 1891, he was required to measure his water at the head of said big ditch, near the mouth of said canyon, and he cannot now change said point of diversion and measurement to the injury of appellants, who are the successors to the water rights of McAnulty through Stanfield or other users of water. The evidence shows that appellants would get more water if the respondent's water was measured at the head of said big ditch, near the mouth of said canyon, than if measured two miles below near the respondent's land. Section 3157 of the Revised Statutes, provides that a person entitled to the use of water may change his place of diversion if others are not injured by such change. The converse of the proposition must be true—that one entitled to the use of water may not change his place of diversion if others are injured by such change.

The judgment is reversed, and the cause remanded, with instructions to the trial court to make findings of fact and conclusions of law in accordance with the views expressed in this opinion, and enter judgment as prayed for in the complaint. Costs are awarded to appellants.

Quarles, C. J., concurs.

Stockslager, J., who tried the actions, and entered both decrees above referred to, took no part in this decision.