(June 4, 1923.)

WOOD RIVER POWER COMPANY, a Corporation, Respondent, v. CORJIA ARKOOSH and S. J. ARKOOSH, Appellants.

[215 Pac. 975.]

WATER RIGHTS—CONSTRUCTION OF CONTRACT—RES JUDICATA—TIME OF VESTING OF COLOR OF TITLE—CHANGE OF POINT OF DIVERSION—PRESCRIPTIVE RIGHT.

1. Where a contract granted the right to carry certain designated water through a ditch, other water than that designated in the contract may not be carried through said ditch under such contract.

2. Oral evidence is admissible to show the surrounding circumstances and identify the property in an ambiguous contract not wholly void for uncertainty.

3. A contract will be construed in the light of surrounding facts and circumstances, to arrive at the real intention of the parties.

4. Identity of issue is one of the essentials of *res judicata*.

5. Color of title acquired after the initiation of adverse use does not relate back to the time of such adverse entry.

6. Without color of title, only the right actually exercised can be obtained by adverse possession.

7. A point of diversion may not be changed if it will work any injury to other appropriators, even if subsequent in time.

APPEAL from the District Court of the Fourth Judicial District, for Blaine County. Hon. H. F. Ensign, Judge.

Action to restrain defendants from changing the point of diversion of water. From judgment for plaintiff, defendants appeal. *Affirmed.*

J. G. Hedrick, for Appellants.

A ditch right is separate and distinct from a water right, and is property the same as any other easement or right of way. (*Ada Co. Irr. Co. v. Farmers' Canal Co.,* 5 Ida. 793, 51 Pac. 990, 40 L. R. A. 485; *Stocker v. Kirtley,* 6 Ida. 795, 59 Pac. 891; *Parke v. Boulware,* 7 Ida. 490, 63 Pac. 1045; *Swank v. Sweetwater Irr. Co.,* 15 Ida. 353, 98 Pac. 297.)

Oppenheim & Lampert and McFadden & Perkins, for Respondent.

Parol evidence is admissible for the purpose of explaining an ambiguity in a written instrument. (*Green v. Consolidated W. & M. Co.,* 30 Ida. 359, 164 Pac. 1016; *Spongberg v. First Nat. Bank,* 15 Ida. 671, 99 Pac. 712.)

When any doubt exists as to the meaning of a written contract, the conditions and motives of the contracting parties, as shown by its recitals or by outside evidence, must be looked into to ascertain what is the real intention of the parties, which, when ascertained, must prevail over the literal sense. (*Burke Land etc. Co. v. Wells Fargo & Co.,* 7 Ida. 42, 60 Pac. 87; 6 R. C. L. 849; *Schurger v. Moorman,*

20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A.,
N. S., 313; *Twin Falls etc. Co. v. Salsbury*, 20 Ida. 110, 117
Pac. 118; *State v. Twin Falls Canal Co.*, 21 Ida. 410, 121
Pac. 1039, L. R. A. 1916F, 236; *Tilden v. Hubbard*, 25 Ida.
677, 138 Pac. 1133.)

.A water right may be appurtenant to a ditch or a ditch
to a water right.    (2 Kinney, Water Rights, 2d ed., p. 1822.)

As the water right is the principal thing, if either is
appurtenant to the other the ditch is appurtenant to the
water right.   (*Jacobs v. Lorenz*, 98 Cal. 332, 33 Pac. 119.)

A water user may not change his point of diversion if
others are injured by such change.   (C. S., sec. 5563;
*Walker v. McGinness*, 8 Ida. 540, 69 Pac. 1003; *Hill v.
Standard Mining Co.*, 12 Ida. 223, 85 Pac. 907; *Montpelier
Mill Co. v. Montpelier*, 19 Ida. 212, 113 Pac. 741; *Hall v.
Blackman*, 22 Ida. 556, 126 Pac. 1047.)

"The test (as to whether a former decree is *res adjudi-
cata*) seems to be the identity of the rights sued for, the
identity of the cause of action, and the identity of. the par-
ties."   (*Neil v. Hyde*, 32 Ida. 576, 186 Pac. 710.)

GIVENS, Commissioner.—This action was brought by
respondent, the Wood River Power Company, a corporation,
to restrain appellants, Corjia Arkoosh and S. J. Arkoosh,
from changing the point of diversion of certain water be-
longing to the appellant Corjia Arkoosh from respondent's
tail-race to respondent's forebay, and also from diverting
any water with the exception of ten inches from respond-
ent's forebay.

Appellant Corjia Arkoosh by answer and cross-complaint
claimed by prescription and grant an easement in the canal
and storage reservoir of the respondent, and the right to
convey 160 inches of water through the same and to divert
the water from respondent's storage reservoir above its
hydraulic works.

Respondent denied that appellant had secured any right
from her predecessors in interest or by prescription, claimed
that the question of prescription was *res judicata*, and that

respondent would be injured by the change in the point of diversion. Trial was had before the court without a jury, resulting in judgment for the respondent, from which appellants appeal.

Respondent is a public service corporation, owning and operating a hydro-electric plant near Bellevue, Idaho, by a storage reservoir fed by a canal from Big Wood River.

Appellant Corjia Arkoosh owns two tracts of land below the reservoir. One of these tracts consists of 147.30 acres, formerly owned by W. H. Adams, with an appurtenant 1883 water right of 150 inches. The bottom land on this place was formerly irrigated by a ditch, with point of diversion below that of respondent company's canal. This ditch was cut by respondent company's tail-race, across which it was later flumed by respondent. The then owner of the place later permitted the flume to fall into disuse, and took his water out of the tail-race, which procedure has been followed by appellant. When appellant acquired the land, she attempted to put a dam in the tail-race to aid in the diversion of this water, but was enjoined from so doing in another action between these same parties, which action went to judgment November 6, 1919, no appeal being taken. The high land on the Adams place was never irrigated prior to appellant's attempt to irrigate it from the reservoir.

Appellant's claim to a prescriptive right is based upon her diversion of 150 inches from respondent's tail-race, as above stated. Appellant's other tract of land consists of eight acres acquired from M. H. Williams, with a flowage right of ten inches of 1891 water through the Williams ditch, under contract with the power company, which right is not disputed. In addition to this ten inches, the right to flow sixty inches of her 150-inch right of 1883 through this Williams ditch is claimed; it is this right which is disputed. The eight acres acquired from M. H. Williams and some fifteen acres of the Adams place are not susceptible of irrigation from the old Adams ditch or the tail-race, being on high or bench lands, on a level with the land owned by Williams. Appellant claims she cannot irrigate such lands

unless she is permitted to flow water from respondent's reservoir.

In 1907 the Idaho Consolidated Mines Company, Ltd., a corporation, respondent's predecessor in interest, made a contract with M. H. Williams, the essential features of which are as follows:

"This agreement entered into this first day of July, 1907, between the Idaho Consolidated Mines Co., Ltd., a corporation, with its operating plant in Bellevue, Idaho, party of the first part, and M. H. Williams, a resident of Bellevue, Blaine County, Idaho, party of the second part, witnesseth:

"Whereas, the party of the first part is desirous of the use of the water in Big Wood River belonging to said second party, from the first of September of each year to May 15th of the following year in perpetuity, it is hereby agreed between the two parties as follows:

"That the party of the first part agrees to install a permanent cement gateway and fix an iron gate in the same at a point in its reservoir which will allow inflow of water to the ditch belonging to the said second party, at the expense of instalation and maintenance of the said first party.

"The second party agrees that in consideration of the foregoing that all of the water according to the decree of the court as may be entered in favor of said second party shall be diverted to the exclusive use of said first party from the first day of September of each year to the 15th day of May of the following year in perpetuity.

"The terms and conditions of this agreement shall extend to the heirs, administrators, executors, assigns or successors of the parties hereto."

In 1917, after Luella Williams, widow and successor of M. H. Williams, had sold all of the water which had been decreed to M. H. Williams in the action adjudicating the water rights of Big Wood River, to other parties, she attempted to sell to appellant a ditch right under this contract for the carrying of 40 inches. At the time the contract of 1907 was entered into, it was apparently considered by the mining company that M. H. Williams and A. D. Williams

were brothers, and the company intended to give the same right to each. As a matter of fact, the Williamses were in no way related. Nevertheless, the power company has always recognized the right of A. D. Williams and his successors in interest under this contract with M. H. Williams.

In 1917, J. T. Loving, the successor in interest of A. D. Williams, after having sold all of the water to which A. D. Williams was entitled by the Big Wood River adjudication case above mentioned, sold to appellant a right to flow twenty inches in accordance with the terms of the agreement with the mining company in 1907.

Appellant contends that under the terms of this contract the water rights acquired by the two Williamses might be separated from their right to flow water through the power company's ditch, and that even though they had disposed of their water rights, appellant's grantors had the right to convey to her the right to carry her water through this ditch.

Respondent, on the other hand, contends that by the terms of this contract the right to carry water was confined to the water later adjudicated and decreed to the two Williamses, and appellant's grantors having disposed of all of the water decreed to the two Williamses, their conveyances to appellant were of no effect because they had nothing to convey

The situation of the parties leading up to the making of the contract of 1907 was as follows: The Williamses had a ditch diverting water from Big Wood River at approximately the same point as where the power company now diverts its water, used to irrigate their high land lying immediately east of and adjoining the present location of the power company's reservoir. The power company in the construction of its ditch destroyed the Williams ditch, and in consideration of the right to use their water during the nonirrigation season, gave to the Williamses the right to carry their water through the power company's ditch. The contract in question states that the power company is desirous of using ''all *the water* [italics ours] in Big Wood River belonging to said second party'' (M. H. Williams),

37 Idaho.—23

and the power company agreed to install a gateway, which would allow the "inflow" of water to Williams' ditch.

In construing this contract, it immediately becomes important to determine what water the parties contemplated would flow out of the reservoir. In the next paragraph of the contract it was agreed that the power company between September and May might use the water to be decreed by the court to Williams. The use of this water by the power company was stated in the contract to be the only reason for the making of the contract, and it is the only specific and definite water referred to in the contract. Certainly it was not contemplated by the parties to this contract that an unlimited amount of water should flow out of this reservoir to Williams.

Where a contract is indefinite and uncertain, but not wholly void for uncertainty, oral evidence is admissible for the purpose of showing the circumstances surrounding the transaction, and to identify the property with reference to which the contract is made. (*Spongberg v. First Nat. Bank,* 15 Ida. 671, 99 Pac. 712; *Burke Land etc. Co. v. Wells, Fargo & Co.,* 7 Ida. 42, 60 Pac. 87.)

In the construction of a contract, the court will endeavor to arrive at the real intention of the parties, and will consider the facts and circumstances out of which the contract arose, and will construe the contract in the light of such facts and circumstances. (*Twin Falls etc. Co. v. Salsbury,* 20 Ida. 110, 117 Pac. 118; *State v. Twin Falls etc. Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *Schurger v. Moorman,* 20 Ida. 97, Ann. Cas. 1912D, 1114, 117 Pac. 122, 36 L. R. A., N. S., 313; *Tilden v. Hubbard,* 25 Ida. 677, 138 Pac. 1133.)

Williams' right under the contract was to flow only water which was later decreed to him. Under the contract, the only water respondent was under obligation to carry through its canal in excess of its own appropriation was the water decreed to the Williamses. If the Williamses could sell this water to parties who under the contract would have the right to compel its delivery through the forebay, and in

addition sell the right to convey the same amount through the respondent's works to the same point, which would be the result if we give force and effect to appellant's contention that the water right and the right to convey the same amount of water could be separated, the respondent would be compelled to provide a ditch large enough to carry double the amount of water specified in the contract. Appellant's grantors and their predecessors in interest having disposed of their water prior to the time that they attempted to convey a right to appellant to carry her water through this canal and divert the same out of the reservoir above the power plant, granted nothing for two reasons: first, because their rights to carry water through this canal were confined to carrying their own water; they no longer had any water, consequently under this contract could give no right to appellant to carry any of their water; second, under this contract they never had any right to authorize or allow others to carry water belonging to such other parties. The mere fact that the Williams' water was being used down the river, and might flow through the dam or through respondent's works, does not affect the legal rights under this contract. It might have been possible to so draw the contract that this would have been possible, but this contract is not capable of the construction contended for by appellant.

By the decree of November 6, 1919, appellant was not enjoined from using a cut in the bank of said tail-race for the diversion of any water which might be flowing therein, whenever the water in the said tail-race was sufficiently high without the interposition of any artificial obstruction to flow into appellant's ditch. The court also made a finding to the effect that appellant had no prescriptive right to flow waters appropriated to her land through respondent's hydraulic works. The sole issue as made by the pleadings was appellant's right to place an obstruction in respondent's tail-race. One of the contested points in the present case was appellant's prescriptive right to carry 150 inches of her water through respondent's hydraulic works. The decree in the former case is not *res judicata* upon this issue, because

the issues are not identical. (*Neil v. Hyde*, 32 Ida. 576, 186 Pac. 710.)

It would appear that appellant has diverted 150 inches of respondent's waste water after it has passed through respondent's hydraulic works, not that appellant has diverted 150 inches of water at respondent's point of diversion, in addition to respondent's 15,000 inches. If now appellant seeks to divert 150 inches of water out of respondent's works above its power plant, and such change of point of diversion of her water would operate to respondent's disadvantage, even though she had acquired a prescriptive right to divert 150 inches of this water below the power plant, the same would give her no right to divert such water above its power plant. Changing the point of diversion would require either that respondent in addition to its own water, carry appellant's water, which would be an added burden and therefore an injury, or that it would be compelled to give appellant some of its own water, which would lessen its power output, and hence be an injury.

Appellant's original point of diversion of this 150 inches was some distance below the respondent's point of diversion. Appellant's point of diversion, therefore, is either the original point out of the river below respondent's point of diversion, or out of respondent's tail-race. Respondent contends that if this point of diversion were to be changed from the river or tail-race to the reservoir, it would materially interfere with the operation of respondent's hydro-electric light plant, and would actually result in a loss of eight horsepower. Appellant has never attempted to exercise any adverse right against the power company in the way of taking water through respondent's diversion works or out of its reservoir. Prior to 1917, when appellant attempted to purchase a right from Luella Williams and J. T. Loving, she could assert no adverse possession coupled with color of title. Since no prescriptive period has elapsed since 1917, her claim of adverse possession as giving her the right to flow water through respondent's hydraulic works must necessarily be confined to the use she made of those works during

the prescriptive period, prior to 1917. That use, being only to divert water from the tail-race, cannot be enlarged, nor can her claim of color of title date back to 1908, the time of beginning of her use of the tail-race. (2 C. J. 198, 230.)

The use which will sustain an easement to carry water through the ditch of another must be adverse and exclusive, and there is no evidence in the record to show that appellant carried her water, as distinguished from respondent's water, through its hydraulic works to the tail-race. If appellant is merely using respondent's waste water, this of course would not be such a use as would ever ripen into a prescriptive use for her to carry her water. (*Brossard v. Morgan*, 7 Ida. 215, 61 Pac. 1031; *Beasley v. Engstrom*, 31 Ida. 14, 168 Pac. 1145.)

It is well settled that a point of diversion may not be changed if it will work any injury to other appropriators, though subsequent in time, and since there is sufficient evidence in this case to support the finding of the trial court that the change of the point of diversion from the tail-race to a point in the reservoir would injure respondent, appellant has no right to so change the point of diversion. (*Walker v. McGinness*, 8 Ida. 540, 69 Pac. 1003; *Hill v. Standard Mining Co.*, 12 Ida. 223, 85 Pac. 907; *Montpelier Mill Co. v. Montpelier*, 19 Ida. 212, 113 Pac. 741; *Hall v. Blackman*, 22 Ida. 556, 126 Pac. 1047.)

Having acquired no rights under the contracts from Luella Williams or J. T. Loving, the trial court properly entered judgment restraining appellant from diverting any water from respondent's reservoir excepting the ten inches which is not controverted.

Budge, C. J., and McCarthy and William A. Lee, JJ., concur.

PER CURIAM.—The foregoing opinion is hereby approved and adopted as the opinion of the court and the judgment of the lower court is affirmed. Costs awarded to respondent.