540 P.2d 792

**Dora M. WERRY, Plaintiff-Respondent,**

v.

**PHILLIPS PETROLEUM COMPANY, a Foreign Corporation, Defendant-Appellant.**

**No. 11790.**

Supreme Court of Idaho.

Sept. 25, 1975.

Thomas Nelson, of Parry Robertson, Daly & Larson, Twin Falls, for defendant-appellant.

Paul M. Beeks, of Smith & Beeks, Twin Falls, for plaintiff-respondent.

BAKES, Justice.

Respondent Dora M. Werry brought this action for breach of a long term lease contract against appellant Phillips Petroleum Company, hereinafter Phillips. Werry's complaint alleged that Phillips had breached the lease agreement by, among other things, failing to deliver up the leased premises at the expiration of the term with a functioning radiant heating system as Werry alleged the agreements

with Phillips required. Phillips denied that the agreements between the parties imposed any such obligation. The trial court submitted the matter to a jury which returned a verdict against Phillips in the amount of $20,000. Phillips has appealed.

In the fall of 1958, Dora M. Werry began negotiations with representatives of Phillips Petroleum Company for the lease of certain real property she owned which was located in the business district of Ketchum on U.S. Highway 93. An old service station was located on the property. It was contemplated under the lease that Phillips would replace it with a modern one. A form lease agreement, prepared on September 10, 1958, and signed by Werry as lessor on October 14, 1958, was submitted to Phillips. The form was furnished by Phillips and a clause therein stated that the lease would not be binding on Phillips until signed on its behalf by one of several named officials of the company. It is uncertain when Phillips accepted the lease offer, but a letter dated March 3, 1959, from Phillips indicates that the head office had then only recently approved the transaction.

The printed lease form was apparently prepared by Phillips for use in the numerous transactions of this nature in which it engages in its nationwide service station business. The term of the lease was for fifteen years with two five year renewal options. The rental for the primary term was $100.00 per month; in the event Phillips exercised its option to extend, the rent would be at the rate of $400.00 per month for both option terms. By the terms of the lease Phillips was granted the right to erect a service station on the premises, to construct any additional buildings and improvements it desired and to alter or remove any improvements it had made. At the expiration of the lease, all improvements then affixed to the realty would revert to Werry.

After the lease offer was submitted, further discussions took place between Werry and Phillips concerning plans for the proposed new service station. In November, 1958, Mrs. Werry's son Russell, who handled his mother's business affairs, went to Phillips' Salt Lake City main offices to negotiate with H. E. LaBelle, Marketing Assistant for the Salt Lake City Division. Russell Werry requested that the station be heated by a radiant hot water system. The hot water for this system would be supplied by a Ketchum company which piped water from nearby natural hot springs into town. Installation of radiant heating pipes in the buildings and driveways would heat the buildings and melt the snow which fell on the driveways, thereby eliminating the need for expensive snow removal. This radiant heating method was used in various enterprises and private homes in the Ketchum area. Testimony indicated that such a system was less costly than other heating methods, required very little upkeep and, if properly installed and maintained, would last upwards of thirty years.

In a letter dated February 10, 1959, Dora Werry made a subsequent offer to Phillips stating that she would allow free rent in the first year of the first five year option if Phillips would install the radiant heating system when it constructed the new service station. This offer was apparently accepted because on March 3, 1959, LaBelle, on behalf of Phillips, sent to Werry the following letter:

"By now you have been informed by our Mr. Wally Page that we have received the approval of our Bartlesville, Oklahoma office to enter into the 15-year lease agreement with you on the Ketchum property. We enclose your copies of the executed Lease Agreement.

"*LEASE PARTICULARS:* Terms of the lease will be for a period of 15 years with a ground rental of $100.00 per month to begin June 1, 1959. Phillips will assume taxes and insurance obligations. There will be two 5-year renewal options at $400.00 per month, you to assume tax and insurance obligations October 1, 1973. There is no purchase option. Phillips is to paint initially and

repaint. Title to improvements on the property will revert to you at expiration of primary term. Phillips is to construct an AR–101 Cutback service station at an estimated cost of $39,500, including radiant heating for building and driveways. You to give Phillips free rent for the full first year of the first five year option to renew in consideration for radiant heating installation.

"It will be appreciated if you will furnish this office for examination a Title Insurance Policy in the amount of $40,000.00. This is the requirement set forth in Paragraph 19 of our Lease Agreement. As soon as this is done we will be in position to prepare for construction.

"We shall have our Engineer call on you soon after receiving the Title Insurance to discuss the details of this construction with you.

"Thank you for your patience while we have worked out the details of this project. All of us in Salt Lake feel that we will have an excellent service station here and we believe it will prove to be a successful venture for both you and Phillips Petroleum Company." Plaintiff's Exhibit "B".

Phillips constructed the service station, including the radiant heating system. However, the evidence indicates that when concrete was being poured for the driveways, hot water was not run through the system. Thus, when hot water was later run through the pipes they expanded and, because the co-efficient of expansion of the pipes was different from that of the concrete, this eventually caused cracking in the concrete and the pipes, and a leaky system resulted. By the early 1970's, as the term of the lease was expiring, the system had become inoperable because of the numerous leaks due to the cracking of the concrete and the pipes. Sometime in the spring or summer of 1973, Phillips terminated its contract with the hot water company. Phillips did not exercise its option to renew the lease at the end of the pri-

mary term, and the property then reverted to Werry. At the end of the term the radiant heating system was valueless and could not be made functional without removing all of the concrete and piping in it and laying a new system. In addition, the evidence indicated that the water company was operating at capacity and it was no longer possible to obtain water from the natural hot springs.

Werry brought suit on the lease contract, alleging *inter alia* that Phillips breached the contract by its failure to deliver an operable radiant heating system at the expiration of the lease. The jury returned a verdict of $20,000 for Werry. Phillips has appealed from the judgment entered on the verdict.

Phillips alleges these assignments of error. First, the trial court erred in submitting the construction of the lease to the jury, but should have ruled as a matter of law that the lease did not require Phillips to deliver a functioning radiant heating system at the expiration of the term. Secondly, Phillips contends that even if the issue of construction was properly a matter for the jury, Phillips argues the judgment below should be reversed because of erroneous and misleading instructions to the jury. Finally, Phillips claims the trial court abused its discretion when it failed to grant its motion for a continuance on the ground of the unavailability of an important witness. We will deal with these claims in order.

I

The trial court determined that the agreement between the parties was embodied in four documents: the original lease agreement, plaintiff's exhibit "A", dated September 10, 1958; the letter dated February 10, 1959, from respondent Werry to Phillips, defendant's exhibit 1; the letter dated March 3, 1959, from Phillips to Werry, plaintiff's exhibit "B", the provisions of which are set out above; and a letter of May 26, 1959, from Phillips to Werry, plaintiff's exhibit "C". While Phillips has

objected to instruction number 4 which describes the subsequent letters as "expand[ing]" the original lease agreement, there is no question but what the agreement between the parties is incorporated in all of the documents, not just the lease agreement. Phillips, in its reply brief, acknowledges as much by its statement at page 5:

"In the exchange of letters, appellant accepted the duty to *install* a radiant heating system." (Emphasis in original).

The original lease agreement made no provision for the radiant heating. All of the references to the radiant heating are in the subsequent letters, defendant's exhibit 1 and plaintiff's exhibit "B".

 Central to appellant's first argument is its claim that the contract is clear and unambiguous and its interpretation is thus a matter of law for the court, citing *Parks v. City of Pocatello,* 91 Idaho 241, 419 P.2d 683 (1966); *Minidoka Co., etc. v. Krieger,* 88 Idaho 395, 399 P.2d 962 (1965). Since there is no language in these writings defining a duty to deliver a functioning radiant heating system, Phillips argues, the court should have directed a verdict in its favor.

We agree that nowhere in the contract is such a duty expressly spelled out, but we do not agree that the trial court erred in finding an ambiguity in the documents and giving the matter of construction to the jury. Instruction number 9, on Construction of Lease and Intent of Parties, states in part:

"[O]ne of the issues involved in this case is whether the defendant breaches its lease with the plaintiff by failing to surrender the service station with an operable radiant heating system.

"The lease and other documents involved in this transaction are not sufficiently clear on the subject to provide a definite answer. In this situation, the duty owed by defendant Phillips Petroleum Company in regard to the heating system is to be measured by the apparent intention of both parties at the time the lease and other documents were executed." Rptr. Tr., p. 191.

An examination of the documents involved, in light of the law of contracts in this jurisdiction, supports this finding of ambiguity.

Appellant relies on paragraphs 3 and 4 of the form lease agreement, which we quote in full, in support of its argument that there is no ambiguity in the lease and that it had no obligation to deliver up a functioning radiant heating system at the end of the lease term.

"3. Lessee is granted the option to erect and install upon said premises, at its sole cost and expense, and according to its own plans and specifications, buildings, improvements and equipment for use as a Service Station. At the expiration of this lease the improvements permanently affixed to the realty and underground tanks then on the premises shall become the sole property of Lessor. In the event Lessee elects to construct and install the new facilities described above, it may alter, remove, tear down or otherwise for its own account utilize or dispose of Lessor's improvements and equipment, if any, referred to in Paragraph 2 above; provided, however, that the new facilities shall be of equal or greater value than said improvements and equipment of Lessors. Upon expiration or termination of this lease for any reason, Lessee shall deliver up the leased premises to Lessor in the same condition as when received except for changes authorized by this agreement or resulting from the elements or causes beyond the control of Lessee.

"4. Lessee shall have the right, at its option, to construct any additional buildings and/or other improvements and to make other curb cuts on said leased premises it may desire, and it shall have the right, at its option, at any time during the term of this lease or any extension or renewal thereof, to change, alter, repair, tear down and/or remove any such additional buildings and/or other

improvements and restore any such curb cuts, which Lessee may construct or create or which it may own. Lessee shall have the right to install such pumps, underground tanks, machinery, apparatus and equipment as may be deemed necessary in the conduct and carrying on of the business on the leased premises. All buildings and other improvements now on the leased premises owned by Lessee, and all buildings and/or other improvements that may be constructed on .the leased premises by the Lessee, and all pumps, underground tanks, machinery, apparatus and equipment shall be and remain the property of the Lessee, with the right, at its option, at any time before the expiration or termination of this lease, and for a reasonable time thereafter to remove the same subject only to the provisions of Paragraph 3 above." (Plaintiff's Exhibit A).

These provisions gave Phillips, as lessee, wide discretion in building improvements and in destroying any improvements then on the property or thereafter constructed by it. Except for the requirement that the new facilities be of equal or greater value than improvements of the lessor on the property at the commencement of the lease (which is not at issue here), there is no provision that the improvements which would revert to the lessor at the expiration of the term be of any particular nature or value. Thus, these provisions viewed alone support Phillips' contention that it had no duty to deliver a functioning radiant heating system on the premises at the expiration of the term.

It is Phillips' letter to Werry of March 3, 1959, written about six months after the lease agreement was submitted to Phillips which makes the agreement ambiguous. The letter contains a new term which was the result of negotiations which occurred after the lease agreement offer had been submitted. The letter says, "Title to improvements on the property will revert to you at expiration of primary term. Phil-

lips is to construct an AR–101 Cutback service station . . . including radiant heating for buildings and driveways. You to give Phillips free rent for the full first year of the first five year option to renew in consideration for radiant heating installation." It is not clear from the language used whether Phillips is promising, in contrast to the language of paragraph 3 quoted above, that a radiant heating system would be included in the improvements that would revert to Werry at the expiration of the term.

Appellant focuses on the word "installation" claiming that all that is promised in the quoted passage is *installation* of radiant heating, which does not impose a concomitant duty to maintain the system for the benefit of the lessor, when read with paragraphs 3 and 4 of the lease agreement. However, this ignores the language in the same paragraph referring to the reversion of improvements to the lessor, which arguably could require such a duty. Further, of what value is the radiant heating system as "consideration" for the free rent for the first year of the option if Phillips had a right to remove it, or no obligation to maintain it? In sum, the March 3, 1959, letter which added the radiant heating terms to the basic agreement created an ambiguity with the terms of the original lease which required that issue to be submitted to the jury.

This Court has frequently held that "where the terms of a contract are ambiguous its interpretation and meaning is a fact question to be determined by the jury." *National Produce Distributors v. Miles and Meyer,* 75 Idaho 460, 465, 274 P.2d 831, 833 (1954). *See also, Big Butte Ranch, Inc. v. Grasmick,* 91 Idaho 6, 415 P.2d 48 (1966); *Molyneux v. Twin Falls Canal Co.,* 54 Idaho 619, 35 P.2d 651 (1934). Extrinsic evidence may be considered by the jury in attempting to arrive at the true intent of the parties. *Big Butte Ranch, Inc. v. Grasmick, supra.* In *Wood River Power Co. v. Arkoosh,* 37 Idaho 348,

215 P. 975 (1923), a case which involved the interpretation of an ambiguous contract, this Court stated:

"In the construction of a contract, the court will endeavor to arrive at the real intention of the parties, and will consider the facts and circumstances out of which the contract arose, and will construe the contract in the light of such facts and circumstances." 37 Idaho at 354, 215 P. at 976.

Thus, we find here that the trial court properly instructed the jury to consider the subject matter and language of the contract, the object and purpose of the contract, the circumstances surrounding the contract and any parol evidence as was heard concerning these issues in its determination of the intention of the parties.

■ There are additional factors in this case, concerning which the jury was properly instructed, which support the conclusion of the jury. First, I.C. § 29–109 provides that where a contract consists partly of a printed form and partly of a written matter prepared with special reference to the particular transaction, the written matter controls where there is conflict. The form lease agreement and the March 3, 1959, letter are a part of the same contract and must be viewed as a whole, but where provisions of the printed form seem in conflict with the letter, the written provisions of the letter control. This conclusion is buttressed by the fact that the letter was written after the execution of the lease agreement and to some extent is a modification of its provisions.

■ Secondly, the entire contract was written by appellant; the basic agreement was a form provided by Phillips and the subsequent letters were written by a Phillips employee. Phillips was the party selecting the language which was used. Where there is doubtful language in a contract, it will be interpreted most strongly against the party who provided that language. *Big Butte Ranch, Inc. v. Grasmick,*

*supra; Morgan v. Firestone Tire & Rubber Co.,* 68 Idaho 506, 201 P.2d 976 (1948).

■ The jury was entitled to consider the facts and circumstances surrounding the contract in addition to the language used. We think there was sufficient evidence to support its verdict in favor of Mrs. Werry. The testimony of Russell Werry concerning the separate negotiations for the radiant heating system and the reasons he and his mother wanted it installed, the circumstances surrounding the receipt of the March 3, 1959, letter, the fact that this occurred several months after the lease agreement was submitted to Phillips and the existence of separate consideration for the radiant heating all support the jury determination.

■ There was no evidence for the jury to consider which would refute Werry's claim beyond Phillips' argument that the language of the lease clearly did not require it to turn over a functioning radiant heating system. This Court will not reverse a jury verdict where it is supported by competent evidence. *Fowler v. Uezzell,* 94 Idaho 951, 500 P.2d 852 (1972).

II

■ In its second assignment of error, appellant claims it was prejudiced by erroneous and misleading instructions to the jury. Instruction 4 stated in part:

"There is no dispute about the following facts:

". . . The lease agreement was expanded by two letters, one of which is dated March 3, 1959, and one of which is dated May 26, 1959, both of which are also in evidence. . . ." Rptr. Tr., p. 188.

Phillips had admitted in its answer to Werry's complaint that there had been "further agreements" between the parties in addition to the lease, as evidenced by letters from Phillips, and does not claim on appeal that these letters were not part of the transaction. It objects, however, to the

use of the word "expanded" as being conclusory and determining one of the facts in issue. We disagree. Appellant admits in its reply brief that the March 3, 1959, letter did add new terms to the contract. The extent or scope of the addition was in issue, but we do not think the jury was misled by the word "expanded."

▇▇ Phillips contends that instruction number 6, which reads as follows, was also erroneous:

"The plaintiff has the burden of proving each of the following propositions:

. . . . . .

"2. That defendant has breached the lease agreement by its failure to deliver up the premises and improvements to plaintiff, upon termination of the lease, with a functioning radiant heating system." Rptr. Tr., p. 189.

Appellant claims this language is susceptible to a reading by the jury that if they find that the defendant failed to deliver up the premises with a functioning system they must find a breach of the lease. Taken alone, instruction number 6 might be susceptible to such an interpretation. However, when read in conjunction with instruction number 9, it is clearly pointed out to the jury that "one of the issues involved in this case is whether the defendant breache[d] its lease with the plaintiff by failing to surrender the service station with an operable radiant heating system," and the jury was not misled as to the issues in the case or the burden which the plaintiff had.[1] As we have so often said:

"The jury will be presumed to have considered the instructions as a whole; consequently, on appeal, jury instructions will not be considered piecemeal."

*Blaine v. Byers,* 91 Idaho 665, at 674, 429 P.2d 397, at 406 (1967).

*Cf. Shields v. Morton Chemical Company,* 95 Idaho 674, 518 P.2d 857 (1974) (Bakes, J., dissenting). We have examined the instructions as a whole and find no error.

### III

▇▇ As a third assignment of error, appellant claims it was an abuse of discretion for the trial court to deny its motion for a continuance because H. E. LaBelle, who Phillips claims was an important witness, was unavailable at the time set for trial. In *Pauley v. Salmon River Lumber Co.,* 74 Idaho 483, 264 P.2d 466 (1953), this Court held that if the affidavit in support of a motion for continuance on the ground of absence of a material witness meets certain criteria, it would be an abuse of discretion for the trial court to refuse to grant the continuance. Among these criteria are a showing of reasonable diligence in attempting to obtain the witness's presence, and of his probable testimony and the importance of that testimony to the issues at trial. We have examined the affidavit in support of the motion and find it lacking in these respects. The affidavit shows this witness was no longer an employee of Phillips and was beyond the subpoena power of Idaho courts. There is no indication that this witness would have appeared voluntarily. Phillips had already obtained one continuance of the trial. The affidavit does not disclose the content or importance of Mr. LaBelle's testimony. On the basis of the lack of specific information in the affidavit, we cannot say that it was an abuse of discretion for the trial court to have denied the motion where, as here, the plaintiff had submitted an affida-

---

1. A portion of instruction number 9 outlined the differing contentions of the parties:

"*INSTRUCTION NO. 9* Construction of Lease—Intent of Parties

. . . . .

"If you find that it was the apparent intent of both parties that the defendant agreed to keep the radiant heating system in operation until the lease expired, then you should find for the plaintiff.

"If you find that it was the apparent intent of the parties that the defendant was to be under no obligation to surrender the property at the expiration of the lease with the radiant heating system in operable condition, then you must find for the defendant." Rptr.Tr., pp. 191–192.

vit in opposition to the motion for continuance showing that the plaintiff would be prejudiced by further delay.

Finding no error, we affirm the judgment of the trial court. Costs to respondent.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.